**Kenneth Wayne MUSE, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Supreme Court of Kentucky.

April 1, 1977.

Rehearing Denied July 1, 1977.

Jack Emory Farley, Public Defender, Timothy T. Riddell, Asst. Public Defender, Frankfort, for appellant.

Robert F. Stephens, Atty. Gen., Mark F. Armstrong, Asst. Atty. Gen., Frankfort, for appellee.

PER CURIAM.

Kenneth Wayne Muse appeals from a judgment entered on a jury verdict finding him guilty of willful murder and fixing his punishment at life imprisonment. Muse claims that the court committed reversible error in that it failed to instruct the jury on assault in the first degree. Secondly, he asserts that the court erred to his substantial prejudice when it failed to conduct a hearing to determine his capacity to stand trial.

Muse, age 24, had been keeping steady company with Austin Saunders' daughter, Linda, age 16, for a period of some sixteen months. After Linda obtained a driver's license, she lost further interest in Muse and terminated their affair.

In the early evening of April 28, 1975, Muse went to the Saunders' home "to get even" with Linda for breaking up the love affair and to seek redress for some rather harsh words said about him by her mother, Elsie. He arrived at the home about 9:25 p.m., carrying a single shot .22 rifle. The first inkling Linda and Elsie had of his presence was when Linda looked up and saw him standing in the door of the laundry room pointing the gun at Elsie's head. Linda screamed and knocked the gun away just as it was fired. Muse immediately fled to the yard. In the ensuing hours he proceeded to shoot through the window; shoot a hole in the gas tank of the car; slash the tires on the car and truck; and to break out numerous windows in the house. During

all of this time Linda and Elsie, after turning off the lights, hid in the bathroom with the door closed. Muse had cut the telephone line so they could not call the police.

Shortly before midnight, Muse knocked the glass out of the door and came into the living room. Austin arrived home from work at about 12:10 a.m. Elsie and Linda ran down the hall toward the living room to warn him of the presence of Muse. Muse turned the living room light on, and just as Austin entered the house he shot him once in the stomach. Although disarmed by Elsie and Linda, he continued to threaten the family with a knife until around 3 a.m. Austin was then removed to the hospital and from there to a Lexington hospital for surgery and treatment of the gunshot wound. He remained in the hospital until Thursday, May 8, when he was taken home. On Sunday, May 11, he experienced some chest pains and was taken to the hospital in Flemingsburg where he died on Wednesday, May 14, of a pulmonary embolism.

The Kentucky Penal Code, KRS 508.010, provides in part as follows:

"*Assault in the first degree*—

(1) A person is guilty of assault in the first degree when:

(a) He intentionally causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument; * * *."

Muse was indicted on a charge of willful murder, KRS 507.020. Therefore, an instruction on assault in the first degree is proper only if it is a lesser included offense of the crime charged in the indictment. Prior to the adoption of the Penal Code, assault in the first degree was categorized under the general designation of "assault and battery." As such, the use of an instruction on this issue in murder prosecutions has been consistently approved but with diverse reasoning for its inclusion or exclusion. The Kentucky Penal Code, KRS 505.020, provides for conviction of a lesser included offense under the following conditions:

"*Prosecution for multiple offenses*—

(1) When a single course of conduct of a defendant may establish the commission of more than one offense, he may be prosecuted for each such offense. He may not, however, be convicted of more than one offense when:

(a) One offense is included in the other, as defined in subsection (2); * * *.

(2) A defendant may be convicted of an offense that is included in any offense with which he formally charged. An offense is so included when:

(a) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged; or

(b) It consists of an attempt to commit the offense charged or to commit an offense otherwise included therein; or

(c) It differs from the offense charged only in the respect that a lesser kind of culpability suffices to establish its commission; or

(d) It differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property or public interest suffices to establish its commission."

This section of the Penal Code appeared in the final draft of the Kentucky Penal Code, published by the Kentucky Crime Commission and Kentucky Legislative Research Commission. The accompanying commentary, in discussing subsection (d), uses as an example of a lesser included offense the following:

" * * * There are other illustrations of this provision that are not quite so obvious. One that is mentioned by the drafters of the Model Penal Code is this: D inflicts an injury upon V. After living for a substantial period of time and still not completely recovered from the injury inflicted by D, V dies. D is charged with intentional homicide. There arises doubt as to whether D's act was the cause of death. Subsection (d) would allow a conviction of intentional assault following a charge of intentional homicide. The assault offense, differing from the homicide offense only as to the degree of injury to person, would be an 'included' offense."

Cf. KRS 500.100; *Kennedy and McGreal v. Commonwealth*, Ky., 544 S.W.2d 219 (1976).

■ As assault in the first degree is an included offense of the crime of murder, an instruction on this issue is required when the circumstances of the case meet the preceding conditions. It is not one to be given indiscriminately in all murder prosecutions simply because it is an included offense of the crime charged. When the evidence is such that there can be no doubt that if the accused is guilty at all he is guilty of homicide, then there should be no instruction on a lesser included offense. The evidence must leave room for some doubt as to whether the act of the accused was the cause of death. Yet, there must at the same time be present all elements necessary to prove an assault in the first degree.

Muse asserts that he was entitled to the assault instruction because there was some question concerning the causal relationship between the gunshot wound and Saunders' death, or, in other words, it is his view that the evidence left room for some doubt as to whether his shooting was the cause of Saunders' death.

Muse relies upon evidence given by the pathologist, Dr. Lamar Meigs, who performed an autopsy on Saunders subsequent to his death. Meigs testified that the immediate cause of Saunders' death was a pulmonary embolism which had resulted from Saunders' wounding and the surgery that followed. However, Muse asserts that the positive aspect of Meigs' testimony is weakened by the following questions and answers:

"Q. And some fourteen days later he suffered from this embolism, now how is it you can arrive at the conclusion that this gunshot wound is the initiating event, could it have been something else?
A. It could have been, it's not very likely."

*    *    *    *    *    *

"Q. Could there have been some other traumatic event that could have caused the embolism?
A. There could have been but I'm now aware of it.

Q. You're basing your opinion on the fact that you were informed that he received a gun shot wound some fifteen days before and the fact that there was an embolism?
A. That is correct and there was no sign of any other injuries."

The pathologist testified categorically that the gunshot wound caused the death. He admitted on cross-examination only the possibility of another cause, which in itself does not remove the issue from the realm of speculation. Also, it is significant that the pathologist testified that the "greatest incidents of the occurrence of pulmonary embolism is in the tenth to twentieth day after the surgery. It may occur as early as seven days or so late as three weeks, but usually ten to fourteen days or more." Here, it occurred the fourteenth day. Finally, the testimony concerning other trauma is even more illusory. Here again, the pathologist admitted to a possibility of other trauma. However, he testified that "there was no sign of any other injury." The "possibility" aspect of his testimony is illustrative of a speculative rather than a factual area.

■ Muse was not required to introduce positive evidence that the embolus was a result of trauma or some other incident rather than his shooting Saunders. The burden was on the Commonwealth to prove beyond a reasonable doubt that the death of Saunders was the direct result of the gunshot wound inflicted by Muse.

■ An instruction on assault in the first degree should not be given in all instances. The propriety of such an instruction must rest upon a case-by-case examination of the totality of the evidence introduced. If the state of the evidence is such that it could justify a reasonable doubt that Saunders died as a result of the gunshot wound, then the question is one for the jury.

■ This court is of the opinion that the evidence in this proceeding does not attain this criterion; therefore, an instruction on assault in the first degree was not required.

■ Muse next claims that the court should have stopped the trial and conducted a hearing to determine whether he had mental capacity to stand trial. Muse's misconduct in the course of this trial was nothing other than what is usually expected of one who suddenly finds himself caught in the toils of the law. From the record, we do not think that there existed reasonable grounds to believe that Muse was not competent to stand trial. Cf. *Via v. Commonwealth,* Ky., 522 S.W.2d 848 (1975).

The judgment is affirmed.

REED, C. J., and CLAYTON, LUKOWSKY, STEPHENSON and STERNBERG, JJ., concur.

JONES and PALMORE, JJ., dissent.

JONES, Justice, dissenting.

From time immemorial it has been the duty of trial courts in criminal prosecutions to instruct on the "whole law of the case." Of course that duty is conditioned on the principle that the slightest evidence supporting a defense or the commission of a lesser included offense required an instruction on the issue. The trial court refused to instruct on assault in the first degree, a lesser included offense. In my view the majority opinion is wrong. Therefore I dissent.

I deem the rights of Muse to have been impinged upon by the majority's view. The following demonstrates the fallacy in their line of reasoning: an assault in the first degree is an included offense of the crime of murder.[1] When the evidence leaves room for some doubt as to whether the act of the accused was the cause of death, the trial court should instruct on the lesser degree of assault in the first degree.

Dr. Lamar Meigs, a pathologist, performed an autopsy on Saunders subsequent to his death. He testified that the immediate cause of Saunders' death was a pulmonary embolism which resulted from Saunders' wounding and the surgery that followed. The positive effect of Meigs' testimony is weakened by the following questions and answers:

"Q. And some fourteen days later he suffered from this embolism, now how is it you can arrive at the conclusion that this gunshot wound is the initiating event, could it have been something else? A. It could have been, it's not very likely."

\* \* \* \* \* \*

"Q. Could there have been some other traumatic event that could have caused the embolism? A. There could have been but I'm not aware of it."

If there is any evidence that indicates a doubt, as long as that doubt is reasonable, that Saunders died as a result of a gunshot wound, then an instruction on the lesser included offense should have been submitted to the jury.

The evidence in this case reveals that the first item that supports a doubt is that Saunders died 14 days after he was shot. He was admitted to a hospital and underwent surgery. Although his recovery was incomplete, he was released from the hospital. Another fact that creates doubt is the manner in which Saunders died. His death was the result of a blood clot (embolus) which had formed in his leg, broke loose and coursed through his circulatory system to his lungs. The embolus cut off the blood supply and caused Saunders' death. Another item that creates doubt is the wavering testimony of the pathologist. His testimony that the event causing the blood clot could have been something other than the gunshot wound, and that it could have been caused by trauma other than that of the wounding and surgery which followed, certainly would leave room for doubt.

The evidence regarding the death of Saunders as a result of a pulmonary embolism creates circumstances sufficient to raise the issue of the cause of death. Was the pulmonary embolism that killed Saunders the result of the gunshot wound and ensuing surgery, or was the embolus the

---

1. KRS 505.020(2)(d).

result of trauma or another incident not related to the gunshot wound and surgery? I say that these questions, supported by the evidence, create some doubt as to the cause of death.[2]

The majority's view does violence to the "whole law of the case" rule. It in effect overrules a number of cases which stand for the principle that where the evidence authorizes it is error on the part of the trial court to fail to instruct on any of the lesser degrees of offense charged in the indictment or in any offense included within that charged. See *Harris v. Commonwealth*, 218 Ky. 798, 292 S.W. 467 (1927); and other cases cited herein.

It is ironic that the trial court instructed on lesser degrees of homicide and yet failed to instruct on assault in the first degree. I am of the opinion that it was error on the part of the trial court to refuse an instruction on assault in the first degree. I believe that the judgment should be reversed for the reasons set out herein.

For all of the reasons enumerated above, I register this, my dissent.

I am authorized to say that PALMORE, J., joins in this dissent.

---

**2.** See the commentary discussing KRS 505.-020(2)(d), in which an example of a lesser included offense is set out. Majority Opinion pp. 566–567.