**Walter JONES, Appellant (Defendant below),**

v.

**The STATE of Wyoming, Appellee (Plaintiff below).**

**No. 4851.**

Supreme Court of Wyoming.

July 14, 1978.

Gerald M. Gallivan, Director, Wyoming Defender Aid Program, and Ernest A. Jackson, Student Intern, Wyoming Defender Aid Program, Laramie, for appellant (defendant below).

V. Frank Mendicino, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Criminal Division, Richard H. Honaker, Asst. Atty. Gen., and Sharon A. Fitzgerald, Student Intern, Cheyenne, for appellee (plaintiff below).

Before GUTHRIE, C. J., and McCLINTOCK, RAPER, THOMAS and ROSE, JJ.

ROSE, Justice.

Appellant was charged with second-degree murder and, after a jury trial, was convicted of manslaughter in connection with the death of his nineteen-month-old stepdaughter. He appeals, alleging that (1) the evidence was insufficient to sustain a manslaughter conviction; (2) the trial court erred in refusing appellant's offered instruction on the offense of child abuse; and (3) misconduct by the prosecutor during closing arguments deprived appellant of a fair trial. We will affirm the conviction.

Appellant first claims that the evidence adduced at trial failed to show that appellant's conduct caused his stepdaughter's death. The evidence—relating to cause of death and appellant's connection with the death—is circumstantial, but it is well settled that the corpus delicti and the criminal agency of the accused may be established by circumstantial evidence. *Coca v. State,* Wyo., 423 P.2d 382, 387; and *Ben-*

*nett v. State,* Wyo., 377 P.2d 634, 637. It is settled law in this state that an expert may give his opinion as to the cause of death in homicide cases—and that such testimony is particularly essential where the patent evidence of cause of death may not be entirely conclusive. *Raigosa v. State,* Wyo., 562 P.2d 1009, 1016.

■ The record discloses the following: Appellant's stepdaughter died as a result of an acute bilateral subdural hemorrhage; such a hemorrhage is almost always caused by physical trauma of considerable force; the child had three bruises on her head which could have been caused by a hand or other blunt instrument; these bruises and other injuries were not present prior to the time that the child came under the exclusive control of appellant; appellant's wife left appellant alone with her apparently-normal child for a period of twenty to twenty-five minutes; and the hemorrhage, in the attending doctor's opinion, could not have been caused by a prior high-chair-fall or other accident. We have, then, fact testimony pertaining to two factors which are unrelated to any inferences. First, the cause of death was trauma. Second, the trauma was inflicted by a blow or blows to the child's head. From these facts, along with the other indicated circumstances, the jury could have reasonably inferred that the blow causing death was inflicted by the appellant. See, *People v. Barnwell,* 60 Mich.App. 291, 230 N.W.2d 400; *State v. Blocher,* 10 Or.App. 357, 499 P.2d 1346; *State v. Parmenter,* 74 Wash.2d 343, 444 P.2d 680; and *People v. Fuentes,* 253 Cal. App.2d 969, 61 Cal.Rptr. 768.

■ Secondly, appellant contends that he was entitled to an instruction covering the offense of child abuse, as set out in § 14–2–106, W.S.1977 [§ 14–22, W.S.1957].[1] Assuming, arguendo, that child abuse is a lesser-included offense of second-degree murder or manslaughter, a trial court is not required to give the lesser-included-offense instruction if the evidence shows that the accused is either guilty or not guilty of the higher grade of the offense. *Richmond v. State,* Wyo., 554 P.2d 1217, 1232, reh. den. 558 P.2d 509; and *Oldham v. State,* Wyo., 534 P.2d 107, 109. Under certain circumstances, child abuse or some related offense, such as assault and battery, may properly be the subject of a lesser-included offense instruction. See, *Turner v. State,* Fla.App., 314 So.2d 183. The propriety of such an instruction, however, depends on considerations analogous to those raised in cases which discuss assault and battery as a lesser-included offense of an intentional homicide. We, of course, make no decision with respect to the assault and battery-intentional-homicide analogy, since that particular question is not raised in this case, but it is useful for purposes of illustration only.

■ In order to justify an assault instruction, as an included offense of the crime charged, there must be some doubt as to whether the act of the accused was the cause of death. See, *Muse v. Commonwealth,* Ky., 551 S.W.2d 564, 567; and *State v. Cote,* Me., 362 A.2d 174, 177. In *Muse v. Commonwealth, supra,* the defendant was charged and convicted of willful murder. On appeal, the defendant's contention that he was entitled to an assault instruction—based on an assertion that there was some question concerning the causal relationship between the gunshot wound inflicted by the defendant and the victim's death as a result of a pulmonary embolism—was rejected. The Supreme Court of Kentucky found that the evidence did not justify a reasonable doubt that the victim died as a result of the gunshot wound—even in the face of testimony raising a speculative possibility of other causes for the embolism. Likewise, in the instant case, expert witnesses testified

---

1. Section 14–2–106, W.S.1977 [§ 14–22, W.S. 1957), provides:

 "(a) It shall be unlawful for any parent, guardian, or custodian of any child under the age of nineteen (19) years to commit any of the following acts with respect to such child:

 "(i) To abandon such child, without just cause;

 "(ii) To abuse, torture, expose, or cruelly punish such child;

 "(iii) To knowingly or negligently cause, permit or contribute to the endangering of such child's life, health or welfare."

that physical trauma to the victim's head caused the death, although other speculative possibilities—including rare blood diseases and vascular malformations of which there was no positive evidence—were raised. Under such circumstances, we hold that an instruction on child abuse was not required.

■ Finally, appellant asserts that he was denied a fair trial by reason of certain comments made by the prosecutor during closing arguments. The first comment in question was as follows:

"It's an awesome responsibility that's imposed upon jurors, but it's the finest system in the world and it's the only one I know of where justice can be obtained in this whole world, the jury system. But it's an awesome responsibility. And I'm not frightened of jurors, I stand in awe of them. In many ways I'm very concerned with jurors because I know that jurors should and generally do—and I've had a great deal of experience with jurors—that they rise to the occasion. They do what they know to be right, and they are not distracted or confused or misled, generally, by devious people. Maneuvering and manipulations are always attempted, and it's proper. I don't mean to say that when an attorney comes in to defend someone he tries, and it's his oath of office and ethical responsibility to do the best thing he can for his client; to raise these little doubts, to distract from the case at hand, to get you all looking at something else so you don't look too closely."

Appellant's counsel objected and moved for a mistrial immediately after this statement was made. The trial court denied the motion but clarified the purported meaning of Mr. Carroll's comments to the jury. Although the prosecutor's comment was clearly improper, we find there was no reversible error since the trial court took immediate steps to remedy the situation. *Simms v. State,* Wyo., 492 P.2d 516, 523; and *State v. Sorenson,* 34 Wyo. 90, 241 P. 705, 707, reh. den. 34 Wyo. 97, 241 P. 607.

■ The second comment of which appellant complains was as follows:

"Naturally these crimes are committed surreptitiously. And you're going to talk about circumstantial evidence, and many criminal cases are based purely on circumstantial evidence. Most crimes are done surreptitiously, you're trying to get away with it. *And then if you can get into a courtroom and just fool one juror, just one, you will never be convicted of any crime regardless of what you may have done, regardless of how despicable it may be. Just one person on the jury can prevent you from ever being convicted.*" [Emphasis supplied]

No objection was lodged against this prosecutorial remark at the time of its utterance. Appellant concedes that the general rule in Wyoming is that the failure to timely interpose an objection to improper argument is treated as a waiver, unless the misconduct of the prosecutor is so flagrant as to constitute prejudicial error, therefore warranting a reversal by the court. *State v. Spears,* 76 Wyo. 82, 300 P.2d 551, 562. See, *Cavaness v. State,* Wyo., 358 P.2d 355, 359; and *Bennett v. State, supra,* at 639. Appellant says that the misstatement of law inherent in Mr. Carroll's comment was so grievous as to justify a reversal under the "plain-error" doctrine, citing *Hays v. State,* Wyo., 522 P.2d 1004; *Parker v. State,* 24 Wyo. 491, 161 P. 552; *Gardner v. State,* 27 Wyo. 316, 196 P. 750; and *State v. Callaway,* 72 Wyo. 509, 267 P.2d 970.

■ The "plain-error" doctrine will be applied only where the error seriously affects the fairness or integrity of judicial proceedings. *Hays v. State, supra.* There must be a transgression of a clear and unequivocal rule of law, in a clear and obvious way, which adversely affects a substantial right. *Hampton v. State,* Wyo., 558 P.2d 504. See, *Todd v. State,* Wyo., 566 P.2d 597; and *Daellenbach v. State,* Wyo., 562 P.2d 679.

■ The rule of law, which appellant claims has been misstated, has to do with the result occasioned by a jury's inability to agree on a verdict—whether it be guilty or not guilty. Article 1, § 11, Wyoming Constitution, provides in relevant part that

". . . If a jury disagree, . . . the accused shall not be deemed to have been in jeopardy."

If a jury cannot agree on a verdict, there is no bar to a subsequent prosecution for the same offense before a different jury. See, *Hoskins v. State,* Wyo., 552 P.2d 342, 347. When Mr. Carroll, the prosecuting attorney, stated, and then repeated, that one person on the jury could prevent a defendant from *ever* being convicted, he clearly misstated the law. See, § 7–11–211, W.S.1977; and *Hovey v. Sheffner,* 16 Wyo. 254, 93 P. 305. The first aspect of the Hampton criteria is thereby satisfied.

There remains for consideration whether, by virtue of this misstatement, a substantial right of the defendant was adversely affected. The right with which we are concerned is the fundamental right to a fair trial, free from tainted argument. *Chavez v. State,* Fla.App., 215 So.2d 750. A reversal and remand for a new trial—because of prosecutorial misconduct—will not be ordered as punishment for a prosecutor's misdeeds, but only because such misdeeds denied the accused a fair trial. *State v. Dillon,* 26 Ariz.App. 220, 547 P.2d 491. Where a prosecutor repeatedly misstates the law to a jury, and thereby plants an erronéous conception which prejudices the defendant, a fair trial may, under certain circumstances, have been denied. *State v. Molatore,* 3 Or.App. 424, 474 P.2d 7. Cf., *State v. Harris,* 290 N.C. 681, 228 S.E.2d 437 (where the effect of relatively minor misstatements of law were subsequently rendered non-prejudicial by an accurate instruction by the trial court). In *State v. Molatore, supra,* the prosecutor asserted during cross-examination that the defendant, if acquitted of the charge of selling a narcotic drug, could not be subsequently charged with possession— to which the defendant had admitted. Objections to such questions were sustained, but thereafter the prosecutor asked the same question three times without reprimand and then argued the matter during closing argument. Although objected to, the trial court refused to strike the argu-ment or tell the jury to disregard it. Such a flagrant and repeated misstatement of the law can be assumed to have prejudiced the defendant. In the instant case, however, we are presented with only an isolated misstatement of the law, which we cannot unequivocally say materially prejudiced this defendant. We hold, therefore, that this prosecutorial conduct did not constitute plain error, warranting a new trial. But, it was close!

This is not to say that this court condones such conduct by prosecutors or— for that matter—any other attorney. We have in the past said—and we hope it is unnecessary to repeat it again in the future—that the duty of the prosecutor is to seek justice, not merely to convict. *Valerio v. State,* Wyo., 527 P.2d 154, 157. With respect to the matter at hand, § 5.8(d), A.B.A. Standards Relating to the Administration of Criminal Justice—dealing with the prosecution function—relevantly provides:

"(d) The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict."

While the comment in this case did not, in our opinion, step over that hazy line which divides harmless and plain error, this opinion will—we trust—stand as an admonition to all that we must proceed with judgment and concern as we undertake to balance society's protection with the rights of the accused.

Affirmed.