Douglas Lee EVERSOLE, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Cecil Wayne PELFREY, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Supreme Court of Kentucky.

Nov. 21, 1978.

Rehearing Denied Feb. 6, 1979.

Jack Emory Farley, Public Defender, Donna Boyce Proctor, Asst. Public Defender, Frankfort, for appellant Cecil Wayne Pelfrey.

Robert F. Stephens, Atty. Gen., Rickie L. Pearson, Carl T. Miller, Jr., Asst. Attys. Gen., Frankfort, for appellee.

JONES, Justice.

Douglas Lee Eversole and Cecil Wayne Pelfrey appeal from judgments of conviction imposing on each of them concurrent prison terms of 20 years on a charge of first-degree burglary and 5 years on a charge of theft by unlawful taking. KRS 511.020; KRS 514.030. Eversole and Pelfrey prosecute separate appeals which are consolidated for review.

■ There are other questions, but the principal issue presented for decision is whether the trial court prejudicially failed to instruct the jury on their tendered instruction of third-degree burglary. At the time the alleged offense was committed (October 29, 1976), KRS 511.020(1)(b) provided that:

> "A person is guilty of burglary in the first degree when he knowingly enters or remains unlawfully in a dwelling with the intent to commit a crime and when:

> . . . . .

> (b) the entering or remaining occurs at night." [1]

The home of William E. Heathman, located on North Main Street in the city of Nicholasville, was burglarized October 29, 1976. Heathman estimated the value of the property taken at $4500.00. Included in the items stolen from his home were a television, a stereo and a large quantity of valuable silverware. Heathman was out of town on the date of the burglary and did not know what time it occurred.

Heathman's daughter, Billie Sue, left home at 7:45 A.M. on the day of the burglary. She returned home that night at 9:00 P.M. When she arrived home the glass in a side door was broken. Thereupon, she called the police.

Larry H. Marshall, Asst. Public Defender, Frankfort, for appellant Douglas Lee Eversole.

1. KRS 511.020(1)(b) was amended by the 1978 legislature by deleting the provision, "the entering or remaining occurs at night." The amendment became effective June 17, 1978.

Richard (Dickie) Jones and his friend, Chester Fultz, were drinking in the Zebra Bar in Lexington about 10:30 P.M., October 29, 1976, when Eversole and Pelfrey came into the bar and offered to sell Jones and Fultz "some stuff." Thereafter, they accompanied Eversole and Pelfrey to Eversole's house where they were shown a television, a quantity of silverware, and a stereo. Jones bought all of the items and later sold some of the silverware to Maude Booth. He testified that Eversole and Pelfrey told him the items were taken from the Heathman dwelling on Main Street in the city of Nicholasville. He, Fultz, Eversole and Pelfrey returned to Nicholasville "the same night they [Eversole and Pelfrey] had broken in it." [Heathman's home]. The purpose of that nocturnal foray was to get the stereo speakers from the Heathman dwelling. They did not stop because "the lights" were on. The burglary had been discovered. On being questioned, Jones was asked:

"Q. Did anybody get out to go in?

A. No sir nobody did.

Q. Why did they [Eversole and Pelfrey] not get out?

A. We was going by and they said, oh, the lights are on. Evidently they had discovered it."

Detective David Williams testified that he recovered some of Heathman's silverware from the residence of Maude Booth several months after the burglary.

State Police Detective Jerry Lovitt, in the course of his investigation, interviewed Eversole at the Scott County Jail. After being advised of his constitutional rights, Eversole made a written voluntary confession as follows:

"On October 29, 1976, at about 9:00 P.M., I went to Nicholasville for the purpose of breaking into a house on North Main Street. I broke the window pane in the side door to gain entry. The articles that I took that I can remember were a stereo, a portable TV, jewelry, coins, and silverware. I sold the TV and stereo to Chester Fultz and Dickie Jones. The silver was traded to Fultz and Jones for a car.

I know the residence was the home of Mr. and Mrs. Edgar Heathman because I had rented an apartment from her. Signed Douglas Eversole."

Although Pelfrey's trial counsel insinuated that Pelfrey could not read or write or at least couldn't perform either of these functions well, Detective Lovitt testified that he advised Pelfrey of his constitutional rights and that Pelfrey made the following voluntary confession in his own handwriting:

"I was in a bar in Lexington. I came to Nicholasville in a truck. It was about 9:30 or 10:00, it was after dark. I stopped at a house on Main Street just as we entered town. I parked the truck in a low lot and went into the house. I came back to the truck and pulled in beside the house. I had piled stuff from inside the house near where I pulled the truck. I loaded the stuff in the truck."

Pelfrey's handwritten confession was signed by him and witnessed by Jean Goldey.

Prior to the introduction in evidence of the statements made by Eversole and Pelfrey, an in-chambers hearing was conducted by the trial court to determine the admissibility of the statements in which they implicated each other in the charged offenses. The trial court concluded that the statements of both Eversole and Pelfrey in which they implicated each other could be read to the jury if any reference to a co-defendant was eliminated. The trial court overruled Pelfrey's objection that his confession was involuntary and that the use of Eversole's statement violated Pelfrey's right of confrontation.

When the Commonwealth concluded its presentation of evidence, neither Eversole nor Pelfrey testified in their behalf, and no testimony was offered by either of them.

Eversole and Pelfrey argue they were prejudiced because the trial court refused to give their tendered instruction on third-degree burglary. They each contend there was a reasonable inference that the crime in question may not have occurred at night.

In this case the breaking into the dwelling was established through the testimony of an occupant. It was also proven that Eversole and Pelfrey had possession of and sold the items stolen from the dwelling. In addition the testimony of Richard Jones was strong substantive evidence, independent of the confessions of Eversole and Pelfrey, which was sufficient to support their convictions. There was not a shred of evidence to indicate that the burglary occurred during the day or other than at night. Thus, the trial court properly refused to give the tendered instruction on third-degree burglary. *Parker v. Commonwealth*, Ky., 279 S.W.2d 1 (1955).

 Eversole and Pelfrey argue the trial court erroneously permitted the prosecutor to make improper and prejudicial comments in his summation to the jury. This court has reviewed the arguments made by counsel for Eversole and Pelfrey and by the Commonwealth's Attorney. The court is of the view that such assertion by Eversole and Pelfrey is similar to the maxim, "the pot calling the kettle black." The comments by the prosecutor in his opening statement, as well as his closing argument, were reasonable comments within the proper confines of the evidence. On the other hand, arguments by counsel for Eversole and Pelfrey were no more than pleas for mercy. This court views the arguments by trial counsel for Eversole and Pelfrey more detrimental to their cause than any statements made by the prosecutor. In his argument, Eversole's attorney, in reference to the time of the burglary, told the jury:

"It was after dark and approximately 9:00, on the 28th [29th] of October 1976 . . . .. We are not pleading and saying there is nothing to this case, because on the other hand there is something to it and I have gone through the same experience myself several times with robbery. It is a matter that is your decision and thoughts on the case. . . ."

In closing Eversole's attorney said:

"I'm not saying they haven't been proven guilty . . . but I am saying that we feel that in all fairness and in all justice, that it is only fair that they be given every consideration. . . ."

Pelfrey's trial attorney apologized to the jury for not making an opening statement. He did allude to the time the offense was committed by saying to the jury:

"Could this burglary have been committed and I'm not saying that there wasn't a burglary, they testified there was, but could this burglary have been committed in the daytime? The law says before you send my client to the penitentiary for 10 to 20 years for committing nighttime burglary, you have to believe beyond a reasonable doubt that he committed nighttime burglary."

He then castigated Richard Jones for his testimony and referred to him as a thief. Pelfrey's trial attorney concluded by saying to the jury:

"All I ask, is that you consider what was said from this witness stand before you decide to send Cecil Wayne Pelfrey to the penitentiary for 10 to 20 years on one charge and 1 to 5 on another one. I just ask that you give them consideration, the same as you have analyzed the evidence, *and you would have no doubt* (emphasis added) that they committed first-degree burglary and theft by unlawful taking. Thank you."

 The record reveals that the trial court, in overruling Eversole's and Pelfrey's motion for probation, considered a presentence investigation conducted by the probation officer. The Commonwealth contends that the trial judge substantially complied with KRS 532.050 and *Brewer v. Commonwealth*, Ky., 550 S.W.2d 474 (1977). The record, however, does not reflect that the contents of such a report were disclosed either to Eversole or to Pelfrey; nor does it appear that they were given an opportunity to controvert the contents of the respective presentence reports. Perhaps the trial court before imposing sentence advised Eversole and Pelfrey, or their respective counsel, of the factual contents and conclusions of the presentence investigation, but the record does not show it. The record fails to disclose also that Eversole and Pelfrey were

afforded a fair opportunity and a reasonable period of time to controvert them. This court has stated many times that the presentence procedure for felony convictions under KRS 532.050 is mandatory. The court has in many cases, and as recently as October 31, 1978, stated that compliance with the provisions of KRS 532.050 is a "must" and is in fact a prerequisite to the entry of a valid judgment. *Arnold v. Commonwealth*, Ky., 573 S.W.2d 344 (Decided October 31, 1978).

This court has reviewed the other assignments of error and find them to be without merit. The judgment of conviction is affirmed and this cause is remanded for resentencing in conformity with *Brewer, supra*, and KRS 532.050.

In Pelfrey's case the jury found him "guilty of first-degree burglary and theft and fixed his punishment at confinement . . . for a period of 20 and 5 years." However, the judgment provides that "this sentence of 20 years shall run concurrently with the sentence of 20 years imposed under indictment No. 77C28 of this indictment." Upon remand for resentencing the trial court is directed to correct the judgment so as to accurately reflect the verdict returned by the jury.

CLAYTON, JONES, STEPHENSON and STERNBERG, JJ., concur.

LUKOWSKY, J., files a dissenting opinion in which PALMORE, C. J., and REED, J., join.

LUKOWSKY, Justice, dissenting.

In my view, the trial court erred when it refused to give the tendered instruction on the lesser included offense of third-degree burglary. This offense is the basic burglary crime. KRS 511.040. Under the circumstances of this case this is the offense of which Eversole and Pelfrey were guilty unless the jury unanimously believed beyond a reasonable doubt that the Commonwealth proved a critical element which differentiates first-degree burglary from third-degree burglary, to wit, that the offense occurred at night. KRS 511.020(1)(b). Night

means the period between thirty minutes after sunset and thirty minutes before sunrise. KRS 511.010(3).

Sunset and sunrise are scientific terms which bear no real relationship to simplistic concepts such as light and dark. The astronomical definition of the time of setting or rising of a body, such as the sun, is the instant when the upper edge of the observable disk (upper limb) is exactly ninety degrees away from the observer's zenith, on the astronomical horizon. No evidence was introduced to establish the time at which these natural phenomena occurred on the date of the burglary. The experience of everyday life provides no precise answer to so sophisticated a question. The trial court did not exercise its right to take judicial notice of these occurrences by making an immediate and accurate determination by resort to readily accessible and indisputable sources, such as meteorological reports in newspapers and astronomical tables in almanacs and advise the jury that on the date in question the time of sunset was 6:47 P.M. and of sunrise was 8:01 A.M. Lawson, Kentucky Evidence Law Handbook, Section 1.00 (A)(ii).

The testimony of the occupants of the dwelling established that the burglary occurred at sometime between 7:45 A.M., the time at which they left the dwelling unattended, and 9:00 P.M., the time at which they returned to the dwelling, and that they did not come into contact with the burglars. Eversole's confession estimates the time of the offense at "about 9:00 P.M." Pelfrey's confession estimates the time of the offense at "about 9:30 or 10:00" P.M. A reasonable juror who believed the occupants could doubt that the burglary occurred at night, i. e. between 7:17 P.M. and 9:00 P.M. Under these circumstances the instruction on the lesser included offense must be given. *Luttrell v. Commonwealth*, Ky., 554 S.W.2d 75 (1977); *Muse v. Commonwealth*, Ky., 551 S.W.2d 564 (1977).

I would reverse the burglary convictions and remand the case for a new trial on those charges.

I am authorized to state that PALMORE, C. J., and REED, J., join in this dissent.