**COMMONWEALTH of Kentucky, Appellant,**

v.

**Billy Stewart JEFFRIES, Appellee.**

No. 2000–SC–0274–DG.

Supreme Court of Kentucky.

Nov. 21, 2002.

Rehearing Denied Feb. 20, 2003.

A.B. Chandler, III, Attorney General, William L. Daniel, II, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, for Appellant.

Suzanne Hopf, Department of Public Advocacy, Frankfort, for Appellee.

Opinion of the Court by Justice STUMBO.

Billy Stewart Jeffries[1], the appellee herein, was convicted of the murder and attempted rape of an elderly female. This Court affirmed Jeffries' conviction following a matter-of-right appeal. *Jeffries v. Commonwealth,* No.1997–SC–525–MR. Jeffries was a seventeen-year-old juvenile at the time he was convicted of the crimes brought against him. He was sentenced on June 9, 1997. In December 1997, Jeffries reached his eighteenth year and was sent to the Shelby Circuit Court, which conducted a hearing pursuant to Kentucky Revised Statute (KRS) 640.030(2). Under this statute, the trial court must determine whether Jeffries should be given probation or conditional discharge, returned to the Department of Juvenile Justice for treatment not to exceed six months, and then be discharged, or remanded to the Department of Corrections to serve the remainder of his sentence in an adult prison.

Prior to Jeffries' eighteen-year-old sentencing hearing, the trial court ordered that a psychological evaluation of Jeffries be conducted by Dr. Katherine Peterson. Jeffries subpoenaed Dr. Peterson in order to question her with regard to her expertise concerning sexual offender treatment programs for "non-admitters," that is convicted offenders who do not admit they committed a sex crime. During Jeffries' confinement at the Central Kentucky Youth Development Center (CKYDC), his trial counsel had requested that Jeffries be placed in a treatment program for non-admitters. Jeffries contended that he should be allowed to call Dr. Peterson as a witness in order to question her about his amenability to sexual offender treatment if a non-admitter program were provided to him. He also subpoenaed witnesses from CKYDC that would provide testimony regarding his progress in treatment.

The trial court, however, would not allow Jeffries to cross-examine Dr. Peterson or call any other witnesses on his behalf at the hearing. In addition, the trial court did not allow avowal testimony of Dr. Peterson or any other witness. The trial court determined that Jeffries was not prime for probation and placed him in the

---

1. We note that the appellee, Billy Stewart Jeffries' middle name has been spelled Stewart as well as Stuart throughout the various pleadings. This opinion uses the name set forth in the indictment.

custody of the Department of Corrections to serve out the remainder of his sentence in an adult prison. Jeffries subsequently appealed to the Kentucky Court of Appeals, which reversed the determination of the trial court because its refusal to admit evidence of rehabilitation was a denial of Jeffries' due process rights. The Court of Appeals held that the trial court erred when it did not allow Jeffries to cross-examine Dr. Peterson and when it did not permit any evidence by avowal. The Commonwealth, the appellant herein, moved for discretionary review, which was granted. The Commonwealth now asks this Court to reverse the decision of the Court of Appeals and uphold the decision of the trial court.

The issue to be decided is what process is due a youthful offender during a KRS 640.030(2) sentencing hearing held after he or she has reached the age of majority. The Commonwealth asserts that the trial court should apply the same sentencing procedures during a youthful offender's eighteen-year-old sentencing hearing as applied in a typical adult sentencing hearing.

KRS 640.030(2) provides that a youthful offender, following his or her eighteenth birthday, must be returned to the sentencing court if time remains on his or her sentence. The sentencing court must then make a determination and decide: 1) whether to place the youthful offender on probation or conditional discharge; 2) whether to return the youthful offender to the Department of Juvenile Justice for six months of additional treatment, followed by discharge; or 3) whether to place the youthful offender in an adult correctional facility.

■ In *Johnson v. Commonwealth,* Ky., 967 S.W.2d 12 (1998), we addressed sentencing hearings of youthful offenders who have attained the age of majority. A youthful offender has no guarantee of probation and under KRS 640.030(2), the sentencing court may only make a decision regarding probation after considering the factors set forth in KRS 533.010. *Id.* at 15. KRS Chapter 533 "Probation and Conditional Discharge," the statute which applies to the probation of adult offenders, is equally applicable to youthful offenders. *Id.*

The Commonwealth argues that the same sentencing guidelines apply to a youthful offender's KRS 640.030(2) sentencing hearing, as they apply in an adult offender's sentencing hearing. The Commonwealth also claims that this view is fully supported by *Johnson, supra.* We agree that our decision in that case supports the idea that the guidelines regarding an adult offender's sentencing hearing were intended to apply to a youthful offender's sentencing hearing as well. However, Jeffries did not receive the same treatment that an adult offender would have received under KRS 532.050.

Jeffries should have been afforded a meaningful opportunity to controvert the evidence against him at his sentencing hearing. This opportunity is provided for in the codified presentence procedure for felony convictions found in KRS 532.050. KRS 532.050(6) states:

> Before imposing sentence, the court shall advise the defendant or his counsel of the factual contents and conclusions of any presentence investigation or psychiatric examinations and *afford a fair opportunity* and a reasonable period of time, if the defendant so requests, *to controvert them.* The court shall provide the defendant's counsel a copy of the presentence investigation report. It shall not be necessary to disclose the sources of confidential information. (Emphasis added).

Here Jeffries received no opportunity to present any evidence or information in his favor at his sentencing hearing. The sentencing court relied on a report assessing Jeffries' propensity for committing further crimes against the public. Jeffries was not allowed to cross-examine Dr. Peterson, the psychiatrist who prepared that report. Nor was he permitted to present any testimony regarding his progress in his treatment program at the juvenile facility where he was confined. Furthermore, it should be noted that the sentencing court did not even allow any evidence to be taken by avowal.

Additionally, Rule of Criminal Procedure (RCr) 11.02(1) requires the sentencing court to "consider the possibility of probation or conditional discharge" and to "afford the defendant and the defendant's counsel an opportunity to make a statement or statements in the defendant's behalf and to present any information in mitigation of punishment."

■ In *Edmonson v. Commonwealth,* Ky., 725 S.W.2d 595 (1987), we held that a trial court may only exercise its discretion to impose concurrent or consecutive sentences after the defendant has been afforded "a fair opportunity to present evidence at a meaningful hearing in favor of having the sentences run concurrently or present other matters in mitigation of punishment." *Id.* at 596. Applying the same logic to the present matter, and in view of KRS 532.050(6) and RCr 11.02, we hold that a trial court, when conducting a KRS 640.030(2) sentencing hearing of a youthful offender, must exercise its discretion to impose one of the three sentencing alternatives outlined in KRS 640.030(2) only after the youthful offender has been afforded a meaningful opportunity to controvert the evidence against him and to present evidence in mitigation of punishment.

The Court of Appeals below held that it was error for the sentencing court to not allow Jeffries to present "his side" of the case in mitigation of punishment. The Court of Appeals further held that Jeffries should have been allowed to introduce testimony of CKYDC treatment staff by avowal, and that he should have also been permitted to cross-examine Dr. Peterson. While we affirm the ultimate decision of the Court of Appeals, our holding today is more limited. We do not reach the issue of whether the sentencing court committed error in its refusal to permit the testimony of specific witnesses. Rather, we hold that the trial court committed error by not providing Jeffries a worthwhile hearing. We decline to prescribe the exact procedures the trial court here, or trial courts in general, should follow. Instead, the trial court should use its learned discretion when it must determine what process is due a youthful offender at a sentencing hearing held pursuant to KRS 640.030(2). Allowing Jeffries to call CKYDC treatment staff as witnesses or allowing him to cross-examine Dr. Peterson may be necessary to provide Jeffries with an appropriate sentencing hearing. However, any such decision lies within the sound discretion of the trial court. This Court simply finds that, in this instance, the trial court did not provide Jeffries a fair opportunity to controvert the evidence against him at his eighteen-year-old sentencing. To hold otherwise would be a violation of Jeffries' right to due process of law.

Jeffries is entitled to receive a meaningful, fair, and equitable opportunity at his sentencing hearing to controvert evidence presented against him. Further Jeffries should be allowed to present evidence in mitigation of punishment. Due process demands no less. On remand, the trial court will need to conduct a sentencing hearing pursuant to KRS 640.030(2) and render a decision regarding Jeffries' future

disposition in conformity with our holding today.

For the aforementioned reasons, we remand this case to the Shelby Circuit Court for proceedings not inconsistent with this opinion.

LAMBERT, C.J.; and COOPER, J. concur.

KELLER, J., concurs in part and dissents in part by separate opinion.

JOHNSTONE, J., dissents by separate opinion, with GRAVES and WINTERSHEIMER, JJ., joining that separate opinion.

KELLER, Justice, Concurring in Part and Dissenting in Part.

I agree with the majority's decision to remand this matter to the Shelby Circuit Court for it "to conduct a sentencing hearing pursuant to KRS 640.030(2) and render a decision regarding [Appellant's] future disposition."[1] However, I find the majority's conclusion "that the trial court committed error by not providing Jeffries a worthwhile hearing"[2] unnecessarily esoteric, and I believe, in its attempt to find a more narrow holding than the one reached by the Court of Appeals, the majority sidesteps the only real issue in this case—i.e., whether the sentencing court denied Appellant procedural due process when it would not allow Appellant to examine, under oath, Dr. Peterson and the witnesses Appellant had subpoenaed from CKYDC. The majority "decline[s] to prescribe the exact procedures the trial court here, or trial courts in general, should follow"[3] and instead concludes, without identifying any

specific error committed by the sentencing court, that "the trial court did not provide Jeffries a fair opportunity to controvert the evidence against him at his eighteen-year-old sentencing."[4] In my view, however, the sentencing court either erred when it refused to permit Appellant to introduce this evidence, in which case we must remand the case to the sentencing court for a new sentencing hearing where the errors will not be repeated, or it committed no error, in which case we should affirm the sentencing court's decision to send Appellant to prison. I see no middle ground. Because I believe the sentencing court's exclusion of this evidence denied Appellant his due process, I, like the majority, would affirm the Court of Appeals, but I dissent in part because I disagree with the scope of the remand directed by the majority opinion.

I believe the dispositive question for this Court is whether, *by excluding this testimony,* the sentencing court failed to provide Appellant: (1) the "fair opportunity and a reasonable period of time ... to controvert"[5] the factual contents and conclusions of Dr. Peterson's report guaranteed by KRS 532.050(6); or (2) the "opportunity ... to present any information in mitigation in punishment"[6] guaranteed by RCr 11.02. Because I believe the Court of Appeals correctly concluded that the sentencing court's rulings did, in fact, deny Appellant procedural due process, and I see no reason to reinvent the wheel, I adopt that portion of Judge Tackett's majority opinion for the Court of Appeals that states:

1. Majority Opinion, 95 S.W.3d 60, 63–64 (2002).

2. *Id.* at 63.

3. *Id.* at 63.

4. *Id.* at 63.

5. KRS 532.050(6).

6. RCr 11.02(1).

In the instant case, the sentencing court denied Jeffries due process in refusing to allow him to present evidence of his progress towards rehabilitation. Jefferies was not permitted to call treatment staff at Central Kentucky Youth Development Center (CKYDC) to testify regarding his progress. Neither was this evidence permitted by avowal. Furthermore, Jeffries was prohibited from cross-examining Dr. Katherine Peterson, the psychiatrist who prepared the court's report assessing Jeffries' likelihood of committing further offenses and/or suitability for probation. Refusing to allow Jeffries to present this evidence was error. Kentucky Rule of Criminal Procedure (RCr) 11.02 allows information to be presented in mitigation of punishment. As the Kentucky Supreme Court stated in *Edmonson v. Commonwealth,* Ky., 725 S.W.2d 595, 596 (1987), these requirements "are not mere procedural formalities, but are substantive and may not be ignored." Herein, Jeffries should have been permitted to present "his side" of the case in mitigation of punishment.

While the Court of Appeals focused its analysis primarily on the question of whether the sentencing court's ruling violated Appellant's RCr 11.02 entitlement to present mitigation evidence, I would emphasize that the exclusion of this evidence also violated Appellant's KRS 532.050(6)

statutory entitlement to controvert the factual contents and conclusions in Dr. Peterson's report. In my opinion, KRS 532.055(6) allows a defendant to do more than merely vocalize his or her disagreement with a Pre–Sentence Investigation Report or a psychological examination,[7] and I believe the sentencing court denied Appellant the opportunity that KRS 532.050(6) guarantees him when it would not permit Appellant to introduce evidence that controverted Dr. Peterson's findings by suggesting that Appellant was amenable to treatment and/or rehabilitation outside of an adult correctional institution. As this Court has held that "the presentence procedure for felony convictions under KRS 532.050 is mandatory"[8] and that "compliance with the provisions of KRS 532.050 is a 'must' and is in fact a prerequisite to the entry of a valid judgment,"[9] I believe the trial court's failure to permit Appellant to introduce evidence to controvert Dr. Peterson's report requires us to remand this case for resentencing.

While the dissenters correctly observe that "in certain cases proper consideration for the seriousness of the crime is the paramount concern,"[10] I do not believe that analysis is germane to the case before the Court. While Appellant's crime was certainly heinous, the trial court in this case did not deny probation because it found that such a sentence would place the public in danger by "unduly depreciating

**7.** *See Doolan v. Commonwealth,* Ky., 566 S.W.2d 413, 414–415 (1978) (referring to the Appellant's ability to *"substantiate* his contention that the prior criminal offenses listed in the report are not properly attributable to him"* and the trial court's ability to "fairly and accurately *authenticate"* the veracity of the Appellant's claims (emphasis added)); *Johnson v. Commonwealth,* Ky., 967 S.W.2d 12, 13–14 (1998) ("At the hearing, Appellant presented several witnesses in his behalf, including [a] Youth Treatment Specialist ...

and ... a clinical social worker from the ... center where Appellant had been confined.").

**8.** *Eversole v. Commonwealth,* Ky., 575 S.W.2d 457, 461 (1979).

**9.** *Id., citing Arnold v. Commonwealth,* Ky., 573 S.W.2d 344 (1978).

**10.** Dissenting Opinion at 95 S.W.2d 60, 68 (Johnstone, J., dissenting).

the seriousness of the crime."[11]   In fact, the trial court's written order does not contain *any* written findings of fact as to the KRS 533.010(2) bases for denying probation.   Instead, the order simply reflects the court's conclusion—presumably based upon Dr. Peterson's report and the trial court's own assumptions regarding amenability to treatment—that the Department of Juvenile Justice could not provide Appellant with the treatment he required:

6. The Department of Juvenile Justice has failed to provide sexual offender treatment or a meaningful evaluation of the Defendant. Though they have recommended to the Court that if the Defendant be probated, there is a favorable prognosis for success, this is unsupported by any appropriate evaluation or information tendered to the Court.

7. The nature of the offense (i.e. murder, attempted rape), coupled with the fact that the Defendant has denied responsibility for the crime and exhibits no signs of remorse or acceptance of the jury verdict confirms that the Defendant is not amenable to any rehabilitation or treatment in the context of the Department of Juvenile Justice.

Therefore, based on the above findings, IT IS ORDERED AND ADJUDGED that the Defendant be incarcerated in an institution operated by the Department of Corrections to serve out the balance of his sentence.

I would not equate the sentencing court's findings with a determination that "[t]he defendant is in need of correctional treatment that can be provided most effectively by his commitment to a correctional institution."[12]   While the finding that the Court actually made would likely provide a basis for declining to return Appellant to the Department of Juvenile Justice to complete a treatment program within six months,[13] I have serious concerns as to whether the sentencing court's decision to deny probation was made in accordance with KRS 533.010.

In any event, however, I believe the sentencing court's finding that Appellant's favorable probation prognosis is "unsupported by any appropriate evaluation or information tendered to the Court" must be considered in light of the court's erroneous limitation on Appellant's entitlement to controvert the primary basis for those findings.   Because the sentencing court prevented Appellant from introducing evidence that was probative as to whether Appellant could receive the necessary treatment in a program aimed at sexual offenders who have not accepted responsibility for their offenses, I believe that Appellant is entitled to a new sentencing hearing where he is allowed to introduce evidence relevant to determining his suitability for treatment in the community.   As KRS 533.010(2) contains a presumption in favor of probation,[14] the sentencing court

11. KRS 533.010(2)(c).

12. KRS 533.010(2)(b).

13. KRS 640.020(2)(b).

14. *See* KRS 533.010(2) ("[P]robation or conditional discharge *shall* be granted, unless the court is of the opinion that imprisonment is necessary for the protection of the public …." (emphasis added)).   Commentary to KRS 533.010 (Banks/Baldwin 1974) ("This subsection seeks to start the sentencing process with probation or conditional discharge as the desired disposition with a movement from there to a sentence of imprisonment only upon a finding of some particular reason justifying the latter."); *Turner v. Commonwealth*, Ky., 914 S.W.2d 343, 347 (1996) ("After considering both the nature of the crime

should first make an informed decision whether to sentence Appellant to a sentence of probation or conditional discharge. If, and only if, the sentencing court determines that probation or conditional discharge is inappropriate because "imprisonment is necessary for the protection of the public" for one or more of the reasons contained in KRS 533.010(2)(a)-(c), it should direct that Appellant be incarcerated in an institution operated by the Department of Corrections.[15]

JOHNSTONE, Justice, Dissenting.

I respectfully dissent. Apparently dissatisfied with the result, the majority has remanded this case to the trial court for a new sentencing hearing. But the majority opinion simply invites the trial court to reach the same conclusion it reached the first time:

> We do not reach the issue of whether the sentencing court committed error in its refusal to permit the testimony of specific witnesses.... *Instead, the trial court should use its learned discretion when it must determine what process is due* a youthful offender at a sentencing hearing held pursuant to KRS 640.030(2). Allowing Jeffries to call CKYDC treatment staff as witnesses or allowing him to cross-examine Dr. Peterson may be necessary to provide Jeffries with an appropriate sentencing hearing. *However, any such decision lies within the due discretion of the trial court.*

Op. at 63 (emphasis added). This is not a case where the trial judge thought he had

no discretion. Judge Stewart recognized that he had discretion, he unequivocally and unambiguously exercised that discretion, and he did so without abuse. To ask him to do so again is an exercise in futility.

Though the case for harmless error would be a facile one to make, I believe there was no error because the law supports the trial court's decision to exclude the witnesses. The majority casts the issue in this case as "what process is due a youthful offender during a KRS 640.030(2) sentencing hearing held after he or she has reached the age of majority." Op. at 62. But that issue was statutorily decided, as Justice Stumbo observed in *Johnson v. Commonwealth*, Ky., 967 S.W.2d 12 (1998): "The prefatory language of KRS 640.030 states clearly that[ ] a youthful offender ... shall be subject to the same type of sentencing procedures ... as an adult ...." *Johnson*, 967 S.W.2d at 15, quoting KRS 640.030. Instead, I suggest that this case presents a different issue: Does a trial judge at a sentencing hearing have the discretion to exclude witnesses, offered by the offender, that the judge finds possess no probative information?

To properly address that issue, we must consider the facts of this case. As Judge Emberton succinctly observed in his Court of Appeals' dissenting opinion: "Jeffries' crime was not one of petty, mischievous, juvenile behavior. He committed a brutal sexual assault on an elderly woman, beating her savagely about the head and face with rocks, leaving her to die." Court of Appeals' opinion at 7. After a mere eight

and the history of the defendant, the trial court should grant probation unless to do so would place the public in danger....").

**15.** Although KRS 640.030(2) requires courts also to consider as a sentencing option "whether the youthful offender shall be returned to the Department of Juvenile Justice

to complete a treatment program ...," KRS 640.030(2)(b), the sentencing court in this case need not consider that option upon remand as Appellant is now above the age of nineteen (19), and "youthful offenders shall not remain in the care of the Department of Juvenile Justice after the age of nineteen (19)." KRS 640.030(3).

months of incarceration and rehabilitation, Jeffries appeared before the judge as an adult for a new sentence and requested that he be probated, or at most returned to a juvenile facility for six months, and then discharged. In fact, those are two of only three options the legislature gave the judge, the final option being to incarcerate Jeffries as an adult. KRS 640.030. In making this decision, the legislature instructed the judge to consider (1) whether there is a substantial risk that Jeffries would commit another crime if probated or discharged, (2) whether Jeffries is in need of correctional treatment, or (3) whether probation or discharge would "unduly depreciate the seriousness of [Jeffries'] crime." KRS 533.010.

This Court has made it abundantly clear that in certain cases proper consideration for the seriousness of the crime is the paramount concern. In *Johnson*, the youthful offender pled guilty to several counts of complicity to kidnapping and complicity to murder. At his resentencing as an adult, the trial judge examined the three KRS 533.010 factors and determined that Johnson was not at risk of committing further crimes and that Johnson received abundant treatment—to which he responded quite well—but the judge nonetheless denied probation and sentenced Johnson as an adult solely because of the serious nature of his offenses. In a unanimous opinion, this Court upheld the trial court's decision:

> Here, the record clearly reflects that the trial court thoughtfully evaluated both the defendant's character and condition and the nature and circumstances of the crime he committed. Based on this evaluation, the court clearly felt that despite the apparently successful rehabilitation of Appellant, granting him probation would clearly endanger the public. This danger presents itself not in the form of Appellant, personally, but

rather in the message his probation would send to the world. Appellant's crime was indeed serious in nature, but the circumstances surrounding the crime indicate that it was also particularly cruel, committed in a callous way, and was apparently motivated not by passion or desperation, but rather merely by boredom and a desire to be entertained. To probate Appellant after only four years of detention, merely because he has cleaned up his act and apologized, would send a message to other children that they can get away with such reprehensible behavior and suffer only minor consequences. The trial court, in its discretion, obviously felt that to send such a message would endanger the public.

*Johnson*, 967 S.W.2d at 15–16. Unlike Johnson, who had received four years of treatment by the time he was resentenced, Jeffries had only received eight months of treatment. That, of course, is because Jeffries was nearly an adult at the time he committed his brutal crimes. Moreover, Johnson was one of several accomplices, but Jeffries acted alone.

With these facts properly framed, it is now possible to examine whether the trial court's decision to exclude certain witnesses violated Jeffries' due process rights. To the majority's credit, it avoids the specious argument asserted by both defense counsel and the majority in the Court of Appeals. With respect to cross-examining Dr. Peterson, defense counsel suggested that he did not know the criteria for the sentencing hearing, but he did know that Jeffries had "the right to confront and cross-examine his accusers." The Court of Appeals' majority opinion reiterated that argument, citing *Eldred v. Commonwealth*, Ky., 906 S.W.2d 694, 702 (1994), *cert. denied*, 516 U.S. 1154, 116 S.Ct. 1034, 134 L.Ed.2d 111 (1996) ("A denial of effective cross-examination is a

constitutional error of the first magnitude, and no showing of want of prejudice will cure it.") But that argument is inapposite in this case: the right to cross-examine witnesses applies to trial, not sentencing. A convicted person may be permitted to cross-examine witnesses at a sentencing hearing, but he is not entitled to do so. *See United States v. Silverman*, 976 F.2d 1502, 1510 (6th Cir.1992) (en banc) ("[C]onfrontation rights do not apply in sentencing hearings as at a trial on the question of guilt or innocence."); *See also United States v. Beaulieu*, 893 F.2d 1177, 1180 (10th Cir.1990); *United States v. Carmona*, 873 F.2d 569, 574 (2nd Cir.1989). But these cases do more than suspend confrontation clause rights at sentencing hearings. These cases stand for the idea that after conviction the process due a person is diminished: "The Bill of Rights as interpreted by the Supreme Court focuses most protections in criminal cases on the adjudication of guilt and innocence. The Fourth Amendment exclusionary rule applies at the trial, but not at sentencing. The right of confrontation does not apply at sentencing." *Stephen Saltzburg, Due Process, History, and Apprendi v. New Jersey*, 38 Am.Crim. L.Rev. 243, fn. 3 (Spring.2001) (internal citations omitted). *Cf Harris v. United States*, 536 U.S. 545, 122 S.Ct. 2406, 2415, 153 L.Ed.2d 524, 538 (2002) (citing *Williams v. New York*, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949)) (Rules of evidence do not apply at sentencing hearings and the trial judge is allowed wide discretion as to evidence to be considered in imposing sentence.) *See also United States v. Lopez*, 898 F.2d 1505, 1512 (11th Cir.1990); *United States v. Agyemang*, 876 F.2d 1264, 1271 (7th Cir. 1989).

Statutory protections, however, may exceed the constitutional baseline, as the majority correctly points out. For example, RCr 11.02 permits a defendant to "present any information in mitigation of punishment." And KRS 532.050 permits a defendant to controvert the PSI or psychiatric examination. In order to examine the fairness of the due process Jeffries received, we must inspect the evidence he offered. With respect to the treatment center employees who worked with Jeffries for eight months, Jeffries' counsel informed the court that the employees would testify that he had performed very well throughout treatment, that they did not testify on behalf of all of their wards (i.e., Jeffries was exceptional), and that Jeffries was not likely to reoffend. While this testimony undoubtedly would have reflected favorably on Jeffries, it simply did not rise to the level of mitigation evidence given the trial judge's limited options.

Appellant also complains that the trial judge improperly denied him the right to cross-examine Dr. Peterson. Although not in the record, Dr. Peterson's report apparently concluded that Jeffries' amenability to treatment was low and his potential to reoffend was high. Further, the report indicated, Jeffries' past was a good predictor of his future—he committed these crimes while on home incarceration for previous crimes. And the fact that Jeffries was a nonadmitter also weighed against his claims of rehabilitation. Defense counsel argued that he tried to enroll Jeffries in a nonadmitter rehabilitation program, but was not permitted to do so. He wanted to examine Dr. Peterson concerning the efficacy of nonadmitter programs and the possibility that Jeffries would respond well if he was afforded the opportunity to attend one. The trial judge correctly determined that this line of inquiry would not be appropriate at the sentencing hearing. Dr. Peterson's testimony, even if favorable to Jeffries would have been little more than speculation: she could only testify that *if* Jeffries had been in a nonadmitter program, he might have

responded favorably or *if* he were sentenced to a nonadmitter program for the following six months—the judge's only option besides release or incarceration—then he would respond well. Such second guessing and prediction is hardly the type of evidence contemplated by RCr 11.02 and KRS 532.050.

Finally, the majority determined that "Jeffries did not receive the same treatment that an adult offender would have received under KRS 532.050. Jeffries should have been afforded a meaningful opportunity to controvert the evidence against him at his sentencing hearing." Op. at 62. But the majority offers no case law to support the claim that these witnesses would have been permitted at an adult sentencing hearing. In fact, the trial judge asserted that he would not have allowed these witnesses at an adult proceeding.

To conclude, I agree with Judge Emberton that Jeffries was afforded all the process he was due by the trial court. A psychological report and a PSI were prepared on Jeffries and these documents were examined by counsel and the trial judge. Jeffries was represented by counsel at the hearing. Jeffries' counsel was permitted to admit evidence and argue on Jeffries' behalf. Given the nature of the crime, the diminished due process rights at sentencing, the limited probativeness of the proposed testimony, the limited sentencing choices afforded the trial court, and the court's discretion to admit evidence, I agree with Judge Stewart that these witnesses would have been superfluous.

GRAVES and WINTERSHEIMER, JJ., join this dissenting opinion.