Caryon JOHNSON, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 97–SC–354–MR.

Supreme Court of Kentucky.

April 16, 1998.

Timothy G. Arnold, Assistant Public Advocate, Gail Robinson, Assistant Public Advocate, Frankfort, for Appellant.

A.B. Chandler III, Attorney General, Kent T. Young, Assistant Attorney General, Frankfort, for Appellee.

STUMBO, Justice.

In 1994, Appellant, Caryon Johnson, then fourteen years old, pled guilty to facilitation to murder, facilitation to robbery in the first degree, facilitation to kidnapping, facilitation to theft over $300.00, two counts of complicity to attempted murder, complicity to robbery in the first degree, two counts of complicity to attempted kidnapping, and

complicity to attempted theft over $300.00. He was sentenced to a total of twenty years on these charges and was committed to the Cabinet for Human Resources' Johnson–Breckinridge Treatment Center in Louisville. On April 8, 1997, Appellant, who had by then reached the age of eighteen years old, returned to the Warren Circuit court for a sentencing hearing pursuant to KRS 640.030(2). At this hearing, the trial judge refused to grant Appellant probation, and ordered Appellant to be incarcerated in an institution operated by the Cabinet of Corrections for the remainder of his twenty-year sentence. Appellant now appeals the trial court's order in the resentencing hearing.

This case involves what eventually came to be known as the "MenaceIISociety" shootings, the name of a violent movie which Appellant and his friends viewed immediately before embarking on a crime spree. On January 23, 1994, a group of boys drove their car into an isolated area and forced the vehicle of another boy, Shane Pearson, off the road. Three of the boys entered Pearson's car and drove away, while Appellant drove the opposite direction in the car in which the boys had been riding. When Appellant met up with his friends, he found Pearson had been fatally shot. The boys drove around a while longer, and came upon a car stopped by the side of the road. Several of the boys approached the car and shot the driver, Matthew Fiorentini, in the chest. Fortunately, Fiorentini survived the shooting. The boys also attempted to murder and kidnap Melissa Hall, who was a passenger in Mr. Fiorentini's car.

Several days after the shootings, Appellant reported his involvement in the crimes to the police. He was charged with several crimes in the McCracken District Court. The Commonwealth moved to transfer Appellant's case to the circuit court pursuant to KRS 640.010(2) for trial as a youthful offender. After considering the factors set forth in KRS 640.010(2)(b), the court transferred Appellant to McCracken Circuit Court, pursuant to KRS 640.010(c), to be proceeded against as an adult. Venue was then transferred from McCracken Circuit Court to

Warren Circuit Court. There, Appellant moved to have his case remanded to juvenile court, but the circuit court rejected his motion.

Shortly thereafter, Appellant pled guilty to the above-mentioned crimes. He was sentenced to twelve months each on the counts of facilitation to theft and complicity to attempted theft, five years each on the counts of facilitation to murder, facilitation to first-degree robbery, and facilitation to kidnapping, ten years on one count of complicity to attempted kidnapping, and twenty years each on the two counts of complicity to attempted murder, the complicity to first-degree robbery count, and the second complicity to attempted kidnapping count. The sentences are to run concurrently for a total of twenty years. Appellant was committed to the Cabinet for Human Resources and ultimately sent to Johnson–Breckinridge Treatment Center in Louisville.

In April of 1997, having attained the age of 18, Appellant was returned to the Warren Circuit Court for a sentencing hearing pursuant to KRS 640.030(2). Under this provision, the court must determine:

(a) Whether the youthful offender shall be placed on probation or conditional discharge;

(b) Whether the youthful offender shall be returned to the Department of Juvenile Justice to complete a treatment program, which ... shall not exceed a period in excess of six (6) months. At the conclusion of the treatment program or at the expiration of six (6) months, whichever first occurs, the individual shall be finally discharged; or

(c) Whether the youthful offender shall be incarcerated in an institution operated by the Department of Corrections[.]

At the hearing, Appellant presented several witnesses in his behalf, including Youth Treatment Specialist Shedrick Clayont, and Robert Steckley, a clinical social worker from the Johnson–Breckinridge center where Appellant had been confined. Both men testified that Appellant had made tremendous strides in the rehabilitation program, that he had learned to become a leader rather than a follower, and that the community would ben-

efit by allowing Appellant to return to society and realize his human potential. Appellant also testified on his own behalf, accepting responsibility for his participation in the crimes and showing remorse for the consequences of his actions and the victims of the crime. At the close of this testimony, Appellant requested the court to grant him probation.

The court noted that KRS 533.010(2) applied to the court's determination of whether to grant probation to a youthful offender under KRS 640.030(2). KRS 533.010(2) states that the sentencing court must consider the nature and circumstance of the crime, and the history, character, and condition of the defendant, and that the court should grant probation or conditional discharge unless the court believes that imprisonment is necessary for protection of the public because:

(a) There is substantial risk that during a period of probation ... the defendant will commit another crime;

(b) The defendant is in need of correctional treatment that can be provided most effectively by his commitment to a correctional institution; or

(c) A disposition under this chapter will unduly depreciate the seriousness of the defendant's crime.

KRS 533.010(2).

On the issue of whether there existed a substantial risk that Appellant will commit additional crimes, the sentencing judge stated, "I don't think there's any possibility that Mr. Johnson will engage certainly in that kind of activity again. I don't think he's a risk to do that." On the issue of whether Appellant required correctional treatment, the court found that, "He's probably gotten all of the correctional treatment that's available to him while he was at Johnson–Breckinridge" and that Appellant "has improved himself as a result of that treatment." The court nonetheless denied probation because, in light of the senselessness of the crimes, to probate Appellant would be to "unduly depreciate the seriousness of the offense." Appellant now appeals the circuit court's denial of probation at the sentencing hearing, raising a single claim of error.

Appellant argues the trial court erred when it applied the requirements of KRS 533.010 to determine whether Appellant qualified for probation under KRS 640.030(2)(a). Appellant suggests, without pointing to an alternative statute to which the Court should turn, that in light of the purpose of the Unified Juvenile Code, youthful offender hearings under KRS 640.030(2) call for a different, more lenient standard for determining whether to grant probation than that found in KRS 533.010. Appellant maintains that to deny a youthful offender probation based solely on the seriousness of the offense would render hearings under KRS 640.030(2) an absurdity, and deprive the juvenile of his due process right to a fundamentally fair proceeding.

Appellant's argument is as follows. The primary purpose of the Juvenile Code is to provide treatment for juvenile offenders in order to rehabilitate them. KRS 600.010(2)(d); KRS 605.100. In fact, the trial court is required to commit juveniles to the Cabinet for Human Resources unless the child poses a danger to himself and others, in which case he may be committed to the Department of Corrections. KRS 640.030(2); KRS 640.070. While in the custody of the Cabinet, the juvenile will receive treatment. Once the child turns 18, he or she is returned to the trial court for a hearing under KRS 640.030(2). The only possible purpose of requiring this hearing is to provide the court with an opportunity to evaluate the progress the child has made during his treatment, and to determine whether the circumstances which justified treating the child as a youthful offender still exist.

Appellant further points out juveniles cannot be transferred to circuit court unless their crimes are very serious in nature. KRS 635.020(1) and (2) (permitting transfer of 14 year old only in cases where the juvenile allegedly committed a Class A or B offense); KRS 640.010(2)(b)(1) (listing the "seriousness of the offense" as one of the seven factors to be considered before a child is transferred). Thus, the court had the right to reject probation based on the seriousness of the offense at the first hearing. To re-

quire the court to adhere to the factors set forth in KRS 533.010 in the second sentencing hearing, (and, thus, requiring the court to deny probation again based on the seriousness of the crime) essentially requires the court to go through the empty gesture of repeating its initial sentencing ruling, despite the fact that the juvenile might have been completely rehabilitated during his commitment with the Cabinet. Such a result would be absurd. "It will not be presumed that the Legislature intended that a needless act be done." *Commonwealth v. Moyers,* Ky., 280 S.W.2d 513, 514 (1955). Therefore, Appellant argues, this Court should declare that the requirements of KRS 533.010 do not apply to juvenile sentencing hearings under KRS 640.030(2).

Furthermore, Appellant argues that the application of KRS 533.010 to probation determinations under KRS 640.030(2) deprives Appellant his due process right to a fundamentally fair proceeding. The "implicit promise" of KRS 640.030(2), Appellant explains, is that if a juvenile works hard, improves himself, and takes advantage of the treatment the state offers him, he will be treated more favorably than a juvenile who does not. To deny Appellant probation after he has worked hard to become a mature and responsible young man, solely because of the seriousness of his crime, the only factor which led to his transfer to circuit court which he cannot change, is to treat him in an arbitrary and fundamentally unfair manner.

■ Although Appellant's argument is emotionally compelling, we believe it to be flawed and ultimately without merit. We first note that there is more than one purpose behind the provision of KRS 640.030 which requires remand of youthful offenders to the custody of the Cabinet for Human Resources until age 18. Although it is certainly true that the Juvenile Code is designed to ensure youthful offenders receive counseling and treatment in an effort to rehabilitate them, the statute is also designed to protect juveniles from incarcerated adults, at least until they reach the age of majority. Once a youthful offender attains the age of 18, however, there is no guarantee of probation or parole, regardless of the progress he may have made along the road to rehabilitation. Instead, the decision to probate or parole a youthful offender may only be made after careful consideration of several factors. Those factors are enumerated in KRS 533.010, which the trial court here properly applied after conducting the sentencing hearing required by KRS 640.030(2). The prefatory language of KRS 640.030 states clearly that:

> A youthful offender, if he ... pleads guilty to[ ] a felony offense in Circuit Court, shall be subject to the same type of sentencing procedures and duration of sentence, including probation and conditional discharge, as an adult convicted of a felony offense ....

The legislature could not have more clearly stated its intention that youthful offenders are to be subject to KRS Chapter 533 "Probation and Conditional Discharge," the chapter which applies to probation of adult offenders.

■ Furthermore, we believe KRS 533.010 is neither arbitrary or violative of due process in the manner in which it prescribes the trial court to make such a determination. Contrary to Appellant's contention, KRS 533.010 does not require that in all instances where the defendant has committed a particularly serious offense the court must deny probation. Rather, it instructs the court to fully consider the nature and circumstances of the crime, as well as the history, character, and condition of Appellant. After considering these factors, the trial court is instructed that it *should* grant probation or conditional discharge unless it believes imprisonment is necessary for protection of the public based on any of the three enumerated factors, one of which is the seriousness of the crime. The wording of the statute itself rebuts Appellant's contention that the trial court is mandated to arbitrarily deny probation based solely on the seriousness of the crime. Instead, the court is permitted, and is in fact urged, to probate the defendant despite the serious nature of the crime, if the court feels that to do so would pose no risk to the public.

■ Here, the record clearly reflects that the trial court thoughtfully evaluated both the defendant's character and condition and

the nature and circumstances of the crime he committed. Based on this evaluation, the court clearly felt that despite the apparently successful rehabilitation of Appellant, granting him probation would clearly endanger the public. This danger presents itself not in the form of Appellant, personally, but rather in the message his probation would send to the world. Appellant's crime was indeed serious in nature, but the circumstances surrounding the crime indicate that it was also particularly cruel, committed in a callous way, and was apparently motivated not by passion or desperation, but rather merely by boredom and a desire to be entertained. To probate Appellant after only four years of detention, merely because he has cleaned up his act and apologized, would send a message to other children that they can get away with such reprehensible behavior and suffer only minor consequences. The trial court, in its discretion, obviously felt that to send such a message would endanger the public. We agree and find no abuse of discretion in the court's decision not to probate Appellant.

The process due Appellant is that prescribed by the statute as discussed above. That process was followed precisely. The decision to remand Appellant to the Department of Corrections was thoughtfully made and in no way arbitrary. Accordingly, we affirm the trial court's order in this matter.

All concur.