

NUMBER 13-14-00367-CR
NUMBER 13-14-00368-CR
NUMBER 13-14-00369-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

ELEAZAR LUNA,                                                                    Appellant,

v.

THE STATE OF TEXAS,                                                              Appellee.

On appeal from the 24th District Court
of Goliad County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Benavides and Perkes
Memorandum Opinion by Justice Benavides**

In this consolidated appeal, appellant Eleazar Luna challenges his convictions on

three separate indictments for indecency with a child, each third-degree felonies.[1]  *See*

---

[1] The following appellate cause numbers are at issue in this case:  13-14-00367-CR; 13-14-

TEX. PENAL CODE ANN. 21.11(a)(2) (West, Westlaw through Chapter 46 2015 R.S.).    By five issues, which we address as three, Luna asserts that: (1) the trial court abused its discretion by overruling his objections to the State's arguments during jury voir dire; (2) the trial court erred by denying his pre-trial motion to suppress; and (3) the trial court erred by admitting an outcry statement.    We affirm.

## I.    BACKGROUND

The State alleged that Luna committed indecency with his next door neighbor's daughter, E.S. ("Child E"),[2] on three separate occasions, in Goliad, Texas.    Luna pleaded not guilty and was tried before a jury on the issue of guilt-innocence.

T.B. ("Mother"), Child E's mother, testified that she lived next door to Luna in Goliad.    According to Mother, Child E's school principal called her into her office one afternoon while Child E was in third grade.    Mother testified that the reason for the meeting was because the principal learned that Child E had made an inappropriate, sexually-related comment to a fellow classmate.    Mother testified that after this particular meeting with the principal, Child E told her that Luna had shown her pornography at his house, exposed his genitals to her, and asked her to expose her genitals to him.    Mother stated that she then alerted the Goliad County Sheriff's Department.

Child E, who was ten years old at the time of trial, testified that Luna was her next door neighbor and described him as a "really nice person."    Child E told jurors that she frequently visited Luna's home and spent time with his granddaughters who would visit

---

00368-CR; and 13-14-00369-CR.

[2] We will use aliases in order to protect the minor's identity.

him occasionally. Child E stated, however, that the summer going into third grade, Luna first spoke to her about sex. Subsequently, Luna began showing pornography to Child E on his television, iPad, or iPhone whenever the two were at Luna's home alone. According to Child E, Luna also possessed a "sex toy that was a boy's private" that would vibrate. Child E said that he never used the toy, but showed it to her and told her that it was available for her use whenever she was ready. Luna also showed Child E some "lotion" that accompanied the sex toy. Child E testified that while Luna showed her pornography, "[h]e would pull his private out of his pants and start touching himself." During this testimony, Child E demonstrated Luna's actions with her hands for the jurors. Child E recalled that on one occasion at Luna's home, Luna asked her to pull her pants down, and she complied by pulling her pants and underwear down, thereby exposing her genitals to him. Child E testified that Luna advised her that if she told anyone about what had happened, they would "both be in a lot of trouble." Child E admitted that the reason she made the inappropriate comment to her classmate was so that the classmate would tell the principal, and give Child E an opportunity to tell someone about Luna's actions.

Luna testified in his defense and denied ever exposing himself to Child E, or asking Child E to expose herself to him. Luna testified that about "four or five [times]" he caught Child E watching pornography on his television. Luna stated that he scolded Child E for watching it, but did not tell Mother because he did not want to get Child E in trouble.

The jury found Luna guilty as charged on each indictment. After the punishment phase of trial, the trial court assessed Luna's punishment on appellate cause number 13-14-00367-CR at five years' imprisonment with the Texas Department of Criminal Justice—Institutional Division (TDCJ-ID), fined him $1,000, and assessed court costs.

3

On the remaining two charges (appellate cause numbers 13-14-00368-CR and 13-14-00369-CR), the trial court also assessed five years imprisonment with TDCJ-ID for each charge, fined him $1,000 for each charge, and assessed court costs. The trial court further suspended the sentences on cause numbers 13-14-00368-CR and 13-14-00369-CR and placed Luna on community supervision, to be served concurrently with his sentence in appellate cause number 13-14-00367-CR. This appeal followed.

## II. JURY VOIR DIRE

By his first two issues, which we treat as one issue, Luna asserts that the trial court abused its discretion by allowing the State to make certain arguments during jury voir dire.

### A. Standard of Review

The trial court has broad discretion over the process of selecting a jury. *Fuller v. State*, 363 S.W.3d 583, 585 (Tex. Crim. App. 2012). We leave to the trial court's discretion the propriety of a particular question and will not disturb the trial court's decision absent an abuse of discretion. *Id.* A trial court abuses its discretion when it prohibits a proper question about a proper area of inquiry. *Id.* A question is proper if it seeks to discover a juror's views on an issue applicable to the case. *Id.* However, a voir dire question or hypothetical that misstates the law is improper. *Thompson v. State*, 95 S.W.3d 537, 541 (Tex. App.—Houston [1st Dist.] 2002, no pet.). A prosecutor's statements during voir dire will not constitute error, so long as they do not going beyond the court's charge. *See Wilder v. State*, 111 S.W.3d 249, 253 (Tex. App.—Texarkana 2003, pet. ref'd). Finally, any erroneous ruling on issues related to questions during jury voir dire are non-constitutional error and subject to a harm analysis. *See* TEX. R. APP.

4

P. 44.2(b); *Fuller*, 363 S.W.3d at 589; *Rich v. State*, 160 S.W.3d 575, 577–78 (Tex. Crim. App. 2005).

## B. Discussion

Luna first argues that the trial court improperly overruled his objection to the State's argument to prospective jurors that the date of commission of the offenses as alleged in the indictments were meaningless. The relevant exchange took place during voir dire:

| | |
|---|---|
| [Prosecutor]: | We also -- now, one indictment says that this was the first time he did this. Another indictment says it was the last time he did this. In order to differentiate different events, all of these indictments read that it happened on or about the 25th of January, 2013, but on or about is a term of art. It doesn't mean what it means normally. |
| | Normally if you say on or about the 25th of January, most of you would probably say within a week, I'm supposing, of the 25th of January, but in the law, it means any time within the statutory, statute of limitations, which doesn't run for many years now, so this really is any time – [Child E] I think is now 10, on up until before the indictment. In other words, at any time. |
| | The date effectively doesn't mean anything in this indictment. So my first question is who here has a problem with that that they feel like the State should have to— |
| [Defense Counsel]: | I'm going to object. He says the date doesn't effectively mean anything. |
| [Prosecutor]: | In this case, it doesn't mean anything because the statute of limitations has not run and would therefore go from the day of her birth on up to before the indictment. |
| THE COURT: | Overruled, go ahead. |
| . . . . | |

5

[Defense Counsel]: Additionally up to the point date of indictment is to -- that makes it pertinent as well, so it is important. You can't say it's not effective. That is a misstatement of law. It has no effect.

THE COURT: All right. Overruled. Go ahead.

We do not read the State's objected-to arguments as expansively or liberally as Luna asserts. Article 21.02(7) of the code of criminal procedure mandates that the time mentioned in the indictment "must be some date anterior to the presentment of the indictment, and not so remote that the prosecution of the offense is barred by limitation. TEX. CODE CRIM. PROC. ANN. art. 21.02 (West, Westlaw through Chapter 46 2015 R.S.). The State qualified its "date" argument by arguing that under the law, the date in the indictment must be within the statutory limitations period, and in this case, the date was within the limitations period and not so remote that prosecution of the indecency with a child offense would be barred by limitations." *See id.* art. 12.01(1)(E) (providing that no time limitation exists for the prosecution of the offense of indecency with a child pursuant to section 21.11 of the penal code). Accordingly, we conclude that this was not an improper statement of the law, and the trial court did not abuse its discretion in overruling Luna's objection.

Next, Luna argues that the trial court abused its discretion by allowing the prosecutor to give prospective jurors a definition of the term "proof beyond a reasonable doubt." The following exchange during voir dire is at issue:

[Prosecutor]: Now, the definition in the instructions you get will be left undefined as to what beyond a reasonable doubt means. A definition that I know, a judge that I knew used to say in his mind, and this is his opinion, it's that certainty that you would bring to any important –

6

[Defense Counsel]: Objection, Your Honor. There's not a definition to reasonable doubt.

THE COURT: Overruled. Go ahead.

[Prosecutor]: And the example he usually used was when to cross a busy street. We do that all the time, but think about it. If you misjudge you're run over and you get killed. It's a serious decision, right? You don't cross the street until you're certain beyond a reasonable doubt that you can get from one side to the other without getting squished like a bug, so it's a serious question. All right.

Now, as I say, one thing that we do know is beyond a reasonable doubt is not created simply because there's conflicting testimony. That's what a trial is supposed to be about is to resolve conflict; right? Who here feels like, well, you know what, if there's conflicting testimony I couldn't in good conscience vote to convict no matter what? Okay.

Reasonable doubt is not created because there are questions that you have that are never cleared up. You know, if the State proves its case beyond a reasonable doubt even though you wonder about this or wonder about that -- almost certainly there will be such questions that won't be answered by the end of the trial, but that by itself doesn't create reasonable doubt. Does anybody have a problem with that?

Another way of saying beyond a reasonable doubt is beyond a shadow of a doubt. It's called the Perry Mason standard. It doesn't exist, but sometimes people say that it has to be beyond a shadow of a doubt or beyond any possibility no matter how remote or absurd. It has to be proved beyond any possibility no matter how remote or absurd. If there's any possibility, no matter how remote or absurd, then I would have to vote not guilty.

7

Who feels that way? Before you can convict, the State would have to prove its case beyond any possibility, no matter how remote or how absurd? Okay. That's just another way of saying beyond a reasonable doubt really. Is there anybody here that feels they could not convict a man unless we established guilt beyond all doubt? Who's going to hold us to that standard?

Luna argues that the State prosecutor's statements regarding reasonable doubt were misstatements of the law, and "interfered with the juror's ability to determine for themselves the meaning of proof beyond a reasonable doubt." We disagree.

The court of criminal appeals has held that while "the better practice is to give no definition of reasonable doubt at all to jury," *Paulson v. State*, 28 S.W.3d 570, 573 (Tex. Crim. App. 2000),

the fact that no definition will be provided for a term does not render a prospective juror's understanding of that term irrelevant. To the contrary, that understanding becomes more crucial to the intelligent exercise of either the State's or the defendant's peremptory challenges because there is no definition to guide what could be a juror's skewed perception of the term.

*Fuller*, 363 S.W.3d at 586 (quoting *Woolridge v. State*, 827 S.W.2d 900, 906 (Tex. Crim. App. 1992)).

In this case, the State's prosecutor prefaced his statements by noting that "beyond a reasonable doubt" was undefined. The State's prosecutor then led into his ultimate questions regarding how the prospective jurors would apply the State's burden of proof by offering examples of what reasonable doubt does not mean or require of the State. We hold that this line of questioning was relevant, not a misstatement of the law, not repetitious, and not improper. *See Woolridge*, 827 S.W.2d at 906. As a result, the trial court did not abuse its discretion in overruling Luna's objection. Luna's first and second

8

issues are overruled.

### III. MOTION TO SUPPRESS

By his third and fourth issues, which we will address together, Luna asserts that the trial court erred by denying his motion to suppress.

### A. Standard of Review and Applicable Law

In reviewing a trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Johnson v. State*, 414 S.W.3d 184, 192 (Tex. Crim. App. 2013); *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008). When the trial court does not make explicit findings of fact, we infer the necessary factual findings that support the trial court's ruling if the record evidence (viewed in light most favorable to the ruling) supports these implied facts. *Johnson*, 414 S.W.3d at 192.

Motions to suppress are reviewed pursuant to a bifurcated standard under which the trial judge's determinations of historical facts and mixed questions of law and fact that rely on credibility are granted almost total deference when supported by the record. *Id.* But when mixed questions of law and fact do not depend on the evaluation of credibility and demeanor, we review the trial judge's ruling de novo. *Id.* (citing *State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. 2013); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)).

To suppress evidence on an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant.

9

*Id.* Once the defendant has made this showing, the burden of proof shifts to the State where it is required to show that the search or seizure was conducted pursuant to a warrant or was reasonable. *Id.* If the State produces evidence of a warrant, the burden of proof shifts back to the defendant to show the invalidity of the warrant. *Russell v. State*, 717 S.W.2d 7, 9 (Tex. Crim. App. 1986). In this case, the State showed that the search in this case was conducted pursuant to a warrant; thus, the burden rests with Luna to show that the warrant is invalid. *See id.*

**B. Discussion**

**1. Incorrect Offense**

Luna first argues that the probable cause affidavit used to obtain the search warrant of Luna's home is invalid because it fails to state facts showing probable cause to believe that Luna committed the offense of continuous sexual abuse of a young child, as alleged in the State's probable cause affidavit.

The probable cause affidavit, prepared by Goliad County Sheriff's Investigator James Garner, stated the following:

> On Friday, January 25, 2013, female victim, age 9 years of age made an outcry at the Goliad Elementary School to School Counselors, of Continuous Sexual Abuse of a Child. School personnel contacted the victim's mother, who in Turn brought victim to the Goliad County Sheriff's office where an initial statement was taken and a C.A.C. Forensic Interview was scheduled with The Harbor Children's Alliance and Advocacy in Port Lavaca, Texas for Tuesday January 29, 2013. During the Forensic interview, conducted by Maria Flores and recorded on DVD, victim stated that sometime between her 2nd Grade year and 3rd Grade year of school, in the summer time while visiting suspect Eleazar Luna . . . at his home residence . . . in Goliad County, Texas, through sometime in November 2012, before Thanksgiving, suspected repeatedly showed her pornographic movies, and exposed his penis to her, masturbating in front of her, and on at least one occasion, had the victim remove her shorts and panties, exposing her anus and sexual organs to the suspect. Suspect Luna also

10

exhibited a sex toy (vibrator) and lotion to the victim stating that she could use these if she would like. Because of the initial outcry and subsequent C.A.C. interview it is requested that a search and arrest warrant for suspect Eleazar Luna be issued.

Garner's affidavit also opined—and the magistrate agreed—that probable cause existed that Luna committed the offense of continuous sexual abuse of a child, *see* TEX. PENAL CODE ANN. § 21.02 (West, Westlaw through Chapter 46 2015 R.S.), instead of indecency with a child, the crime for which he was ultimately charged.   *See id.* § 21.11(a)(2).

Luna fails to demonstrate how Investigator Garner's purported incorrect conclusion of law as to which offense Luna committed operates to invalidate an otherwise valid warrant containing probable cause.   *See Borsari v. State*, 919 S.W.2d 913, 917 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd) (holding that appellant did not meet his burden to invalidate a warrant in which the affiant believed appellant had committed attempted capital murder rather than solicitation of capital murder); *see also* 40 GEORGE E. DIX & JOHN M. SCHMOLESKY, TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 9:39 (3d ed. 2011) ("Technical details of the conclusions drawn by the affiant do not control." (referencing the *Borsari* case)).   Accordingly, we overrule Luna's third issue.

### 2. Staleness

Luna next argues that "stale information" within the probable cause affidavit rendered the affidavit deficient to state facts showing probable cause to believe Luna committed the offense alleged.

A request for a search warrant must contain facts presented to a magistrate that probable cause does in fact exist for its issuance.   *See* TEX. CODE CRIM. PROC. ANN. art. 18.01(b) (West, Westlaw through Chapter 46 2015 R.S.).   Among other requirements,

11

the affidavit must set forth facts that the property or items constituting evidence to be searched for or seized are located at or on the particular person, place, or thing to be searched. *Id.* § 18.01(c)(3). These allegations are sufficient if they would justify a conclusion that the object of the search is probably on the premises. *Ramos v. State*, 934 S.W.2d 358, 363 (Tex. Crim. App. 1996). Moreover, the facts relied on must not have become "stale" by the time the warrant issued. *Burke v. State*, 27 S.W.3d 651, 653 (Tex. App.—Waco 2000, pet. ref'd). This means that the affidavit must show that the act or event upon which probable cause is based occurred within a reasonable time prior to the making of the affidavit. *Id.* The amount of delay that will make information stale for search warrant purposes depends upon the particular facts of a case, including the nature of criminal activity and the type of evidence sought. *Ellis v. State*, 722 S.W.2d 192, 196 (Tex. App.—Dallas 1986, pet. ref'd). Mechanically counting days is of little assistance in this determination, but, rather, common sense and reasonableness must prevail, with considerable deference to be given to the magistrate's judgment based on the facts before him, absent arbitrariness. *Id.* at 196–97.

Here, Investigator Garner's probable cause affidavit states that Luna committed the alleged acts sometime during the summer of Child E's transition from second grade to third grade through "sometime in November 2012." The search warrant then issued some two months later on January 30, 2013. Garner alleged that Luna's conduct toward Child E occurred over a period of time and involved items that are likely stored privately in Luna's home, and not typically disposed of after use, such as the pornography, a vibrating sex toy, and lotion. Based upon the facts of this case, we conclude that such allegations in Investigator Garner's affidavit are not stale so as to render it deficient or

12

invalid.  *See id.*  As a result, we overrule Luna's fourth issue.

## IV.  OUTCRY STATEMENT

By his final issue, Luna contends that the trial court abused its discretion by admitting evidence of Child E's outcry statement given to a law enforcement officer, after she had already made an outcry statement to Mother.

### A. Applicable Law and Standard of Review

In a prosecution for indecency with a child younger than fourteen years of age or a person with a disability, an outcry statement made to the first person, age eighteen or older, other than the defendant, to whom the child or person with a disability made a statement about the offense, is not inadmissible because of the hearsay rule, *see* TEX. R. EVID. 802, if statutory notice requirements are given to the adverse party, the trial court finds in a hearing conducted outside the presence of the jury that the statement is reliable based on the time, content, and circumstances of the statement, and the child or person with a disability testifies or is available to testify at the proceeding in court or in any other manner provided by law.  *See* TEX. CODE CRIM. PROC. art. 38.072 (West, Westlaw through Chapter 46 2015 R.S.).

We review a trial court's decision to admit an outcry statement for abuse of discretion.  *See Garcia v. State*, 792 S.W.2d 88, 92 (Tex. Crim. App. 1990).  Thus, we will uphold the trial court's ruling if it is within the zone of reasonable disagreement.  *See Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000).  Any finding of an abuse of discretion for admitting inadmissible hearsay constitutes non-constitutional error, and will be reviewed to determine whether the error affected the appellant's substantial rights.  *See* TEX. R. APP. P. 44.2(b); *see also Johnson v. State*, 967 S.W.2d

13

410, 417 (Tex. Crim. App. 1998) ("A criminal conviction should not be overturned for non-constitutional error if the appellate court, after examining the record as whole, has fair assurance that the error did not influence the jury, or had but a slight effect.").

## B. Discussion

Luna argues that the trial court abused its discretion by admitting inadmissible hearsay outcry testimony from Mother related to statements made by Child E to the Goliad County Sheriff's Department because those statements were not the first statements made to an individual over the age of eighteen, in order to be admissible under article 38.072.

Assuming without deciding that the trial court abused its discretion by admitting this outcry testimony, we nevertheless conclude that any error related to this testimony was harmless. Child E testified at trial, without objection, and outlined the same allegations against Luna that were testified to in the outcry statement to the Goliad County Sheriff's Department. Additionally, Child E was subject to detailed cross-examination about her allegations against Luna. Moreover, the law is clear that the testimony of a child sexual abuse victim is sufficient to support a conviction for indecency with a child. *Gonzalez Soto v. State*, 267 S.W.3d 327, 332 (Tex. App.—Corpus Christi 2008, no pet.) (internal citations omitted).

After reviewing this record as a whole, we have fair assurance that any error on admitting Mother's outcry testimony did not influence the jury, or had but a slight effect to make it harmless. *See, e.g., Allen v. State*, 436 S.W.3d 815, 822 (Tex. App.—Texarkana 2014, pet. ref'd) (finding harmless error in admitting improper outcry witness testimony when the child complainant testified to the same facts contained in the outcry

14

statement and was subject to cross examination). Accordingly, we overrule Luna's final issue.

## V. CONCLUSION

We affirm the trial court's judgments.

GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).


Delivered and filed the
16th day of July, 2015.