RENDERED:  JANUARY 23, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1541-MR

JOSHUA N. EMBRY                                APPELLANT

                     APPEAL FROM HENDERSON CIRCUIT COURT
v.                HONORABLE KAREN LYNN WILSON, JUDGE
                        CASE NO. 23-CR-00120

COMMONWEALTH OF KENTUCKY                      APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  EASTON, KAREM, AND McNEILL, JUDGES.

KAREM, JUDGE:  Joshua N. Embry appeals from the Henderson Circuit Court's final judgment denying probation and sentencing him to serve ten years.  He argues the court was required to make express findings to show that it considered his age and factors unique to his youth in determining whether he was entitled to

probation. Because there is no legal authority imposing such a duty on the court, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On November 25, 2022, Embry and Zakeylen Headen robbed Connor Nunn during a sale of marijuana. According to the police report, Nunn stated that he went to an address to sell marijuana to Embry. When Nunn handed the marijuana to Embry, Embry looked at Headen, who pulled out a gun. Headen shot Nunn in the arm and leg and fired a third shot which endangered another individual in the vicinity. Headen told police Embry advised him he was not planning to pay for the marijuana. According to Embry and Headen, Nunn precipitated the incident by pulling a gun from his waistband.

Embry was sixteen years of age at the time of the commission of the crime. He had been previously convicted as a youthful offender of first-degree wanton endangerment in Henderson Circuit Court. He was initially charged with first-degree robbery and then transferred to circuit court as a youthful offender. He was indicted for two counts of complicity to first-degree assault; one count of complicity to first-degree robbery; four counts of complicity to first-degree wanton endangerment; possession of a handgun by a minor; enhanced possession of marijuana; and enhanced drug paraphernalia – buy/possess. On February 2, 2024, he entered a plea of guilty to amended charges of two counts of complicity to first-

degree assault; one count of complicity to first-degree robbery; and one count of complicity to first-degree wanton endangerment. The other charges were dismissed. The circuit court imposed a total sentence of ten years in prison and placed Embry in the custody of the Department of Juvenile Justice (DJJ).

When Embry reached the age of eighteen in June 2024, the circuit court scheduled a sentencing hearing as required under Kentucky Revised Statutes (KRS) 640.030(2). Embry and the Commonwealth jointly moved to continue the hearing to allow Embry to graduate from several programs at the DJJ. He remained in the custody of the DJJ for five more months. At that time, Embry's counsel filed a motion for probation, reporting that Embry had completed the treatment program at Mayfield Youth Development Center, graduated from high school, and earned a certificate in Business and Apartment Management. If probated, Embry planned to continue his vocational education and eventually become a truck driver. The motion argued that Kentucky law favored probation for youthful offenders.

At the sentencing hearing, the circuit court stated:

After considering the nature and circumstances of the crime, and the history, character, condition of the defendant, and the contents of your pre-sentence investigation report, this court is of the opinion that imprisonment is necessary for the public because there is a substantial risk that during the period of probation or conditional discharge the defendant would commit another crime; the defendant is in need of correctional

-3-

treatment most effectively to be provided by his commitment to a state correctional institution, and a disposition of the defendant on probation or conditional discharge would unduly depreciate that crime.

The trial court entered final judgment holding that imprisonment was necessary for the protection of the public because:

(a) there is substantial risk that during a period of probation or conditional discharge the defendant will commit another crime;

(b) the defendant is in need of correctional treatment that can be provided most effectively by his/her commitment to a correctional institution; and

(c) a disposition of the defendant upon probation or conditional discharge will unduly depreciate the seriousness of the defendant's crimes;

(d) there is a likelihood that during a period of probation with an alternative sentencing plan or conditional discharge the defendant will commit a Class D or Class C felony[.]

Embry was transferred to the custody of the Department of Corrections and placed in an adult prison. This appeal followed.

## STANDARD OF REVIEW

"[P]robation is not a right but a privilege or a species of grace extended to a convicted criminal for his welfare and the welfare of organized society." *Burke v. Commonwealth*, 506 S.W.3d 307, 314 (Ky. 2016) (internal quotation marks and citations omitted). "[T]he granting of probation is wholly

within the discretion of the trial court." *Id.* A trial court abuses its discretion if its decision is "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

## ANALYSIS

The Kentucky Supreme Court has provided the following overview of the special statutory procedures relating to the sentencing of juvenile criminal defendants:

> The Kentucky Unified Juvenile Code established that jurisdiction related to minors was vested in the District Courts, with a particular exception for "youthful offenders" who could, under the provision of KRS Chapter 640, be transferred to circuit court to stand trial and be sentenced as an adult. However, a caveat was expressed in KRS 640.030 that required the juvenile to be housed in a juvenile detention facility until his sentence expired, he was probated or paroled, or he reached his 18th birthday. If the juvenile turned 18 before expiration, probation, or parole, then the sentencing court had to make further adjudications, which in common parlance came to be called "resentencing." In fact, the length and all other conditions of the Youthful Offender's sentence remain the same except for whatever statutory determinations the trial court makes at that review. The court's options at that point are to place the Youthful Offender on probation or conditional discharge, incarcerate him in adult prison, or return him to the Department of Juvenile Justice to complete a treatment program of up to five months.

*Commonwealth v. Merriman*, 265 S.W.3d 196, 198 (Ky. 2008), *as modified* (Oct. 2, 2008).

-5-

In deciding whether to place a youthful offender who has committed a felony on probation, the trial court is required to employ the statutory sentencing procedure used for adults. "A youthful offender, who is convicted of, or pleads guilty to, a felony offense in Circuit Court, **shall be subject to the same type of sentencing procedures and duration of sentence, including probation and conditional discharge, as an adult** convicted of a felony offense[.]" KRS 640.030 (emphasis supplied).[1]

The specific criteria to be used by the court in determining whether to grant probation are listed in KRS 533.010, which provides in relevant part:

> [A]fter due consideration of the defendant's risk and needs assessment, nature and circumstances of the crime, and the history, character, and condition of the defendant, probation or conditional discharge shall be granted, unless the court is of the opinion that imprisonment is necessary for protection of the public because:
>
> (a) There is substantial risk that during a period of probation or conditional discharge the defendant will commit another crime;
>
> (b) The defendant is in need of correctional treatment that can be provided most effectively by his commitment to a correctional institution; or
>
> (c) A disposition under this chapter will unduly depreciate the seriousness of the defendant's crime.

KRS 533.010(2).

---

[1] The exceptions to the sentencing of juveniles listed in KRS 640.060 are not applicable to the case at bar.

If the court determines that probation is not appropriate, it is required to grant probation with an alternative sentencing plan unless it determines that imprisonment is necessary for the protection of the public. KRS 533.010(3). It is directed to consider the following factors in making this determination:

> (a) There is a likelihood that during a period of probation with an alternative sentencing plan or conditional discharge the defendant will commit a Class D or Class C felony or a substantial risk that the defendant will commit a Class B or Class A felony;
>
> (b) The defendant is in need of correctional treatment that can be provided most effectively by commitment to a correctional institution; or
>
> (c) A disposition under this chapter will unduly depreciate the seriousness of the defendant's crime.

KRS 533.010(3).

Although the statutory framework is clear, Embry nonetheless maintains that youthful offenders are entitled to specialized sentencing under our statutes, case law, and the Eighth and Fourteenth Amendments of the United States Constitution. He contends that under these authorities, the trial court was required (1) to make specific findings to reflect that it had considered his youth and factors that distinguish youthful offenders from other criminal defendants, and (2) to explain why, based on the evidence, Embry was not a good candidate for probation. Embry contends that Kentucky's Juvenile Code, KRS Chapters 640 to 645, mandates specialized sentencing for youthful offenders in order to further the

-7-

express legislative purpose of the Code to promote the "protection of children[.]" KRS 600.010(2)(a). He argues that probation is part of a youthful offender's "right to treatment reasonably calculated, through the use of evidence-based programs when available, to bring about an improvement of [the child's] condition[.]" KRS 600.010(2)(d). He describes the circuit court's decision to deny probation as manifesting cruelty by initially encouraging children and then youth to learn from their mistakes and do better, but then denying them an opportunity to demonstrate that they have reformed their behavior.

Virtually identical arguments to Embry's were addressed and rejected by the Kentucky Supreme Court in *Johnson v. Commonwealth*, 967 S.W.2d 12 (Ky. 1998). Johnson, a youthful offender, entered a plea of guilty to multiple charges, including facilitation to murder and facilitation to first-degree robbery, when he was fourteen years of age. He was placed in the custody of the Cabinet for Human Resources. When he returned to the circuit court for sentencing at the age of eighteen, several witnesses testified that he had made great strides in rehabilitation. The circuit court nonetheless denied his request for probation on the grounds that doing so would unduly depreciate the seriousness of the offense.

On appeal, Johnson argued, as Embry does, that in order to further the primary purpose of the Juvenile Code "to provide treatment for juvenile offenders in order to rehabilitate them[,]" "youthful offender hearings under KRS 640.030(2)

call for a different, more lenient standard for determining whether to grant probation than that found in KRS 533.010." *Johnson*, 967 S.W.2d at 14.  As evidence for this, Johnson pointed to the numerous statutes pertaining exclusively to the treatment of juvenile criminal defendants:

> [T]he trial court is required to commit juveniles to the Cabinet for Human Resources unless the child poses a danger to himself and others, in which case he may be committed to the Department of Corrections.  KRS 640.030(2); KRS 640.070.  While in the custody of the Cabinet, the juvenile will receive treatment.  Once the child turns 18, he or she is returned to the trial court for a hearing under KRS 640.030(2).  The only possible purpose of requiring this hearing is to provide the court with an opportunity to evaluate the progress the child has made during his treatment, and to determine whether the circumstances which justified treating the child as a youthful offender still exist.

*Id*.

Johnson specifically argued that the application of the adult sentencing statute, KRS 533.010, to probation determinations under KRS 640.030(2) deprived him of his due process right to a fundamentally fair proceeding, contending that the

> "implicit promise" of KRS 640.030(2) . . . is that if a juvenile works hard, improves himself, and takes advantage of the treatment the state offers him, he will be treated more favorably than a juvenile who does not.  To deny [him] probation after he has worked hard to become a mature and responsible young man, solely because of the seriousness of his crime, the only factor which led to his transfer to circuit court which he cannot change, is to

-9-

treat him in an arbitrary and fundamentally unfair manner.

*Id*. at 15.

The Kentucky Supreme Court described Johnson's arguments as "emotionally compelling," but without statutory support, stating:

> [T]here is more than one purpose behind the provision of KRS 640.030 which requires remand of youthful offenders to the custody of the Cabinet for Human Resources until age 18. Although it is certainly true that the Juvenile Code is designed to ensure youthful offenders receive counseling and treatment in an effort to rehabilitate them, the statute is also designed to protect juveniles from incarcerated adults, at least until they reach the age of majority. Once a youthful offender attains the age of 18, however, there is no guarantee of probation or parole, regardless of the progress he may have made along the road to rehabilitation. Instead, the decision to probate or parole a youthful offender may only be made after careful consideration of several factors. Those factors are enumerated in KRS 533.010, which the trial court here properly applied after conducting the sentencing hearing required by KRS 640.030(2). The prefatory language of KRS 640.030 states clearly that:
>
> > A youthful offender, if he . . . pleads guilty to[ ] a felony offense in Circuit Court, shall be subject to the same type of sentencing procedures and duration of sentence, including probation and conditional discharge, as an adult convicted of a felony offense . . . .
>
> The legislature could not have more clearly stated its intention that youthful offenders are to be subject to KRS

-10-

Chapter 533 "Probation and Conditional Discharge," the chapter which applies to probation of adult offenders.

*Id.*

The *Johnson* Court further held that the procedures prescribed in KRS 533.010 are "neither arbitrary or violative of due process" and that it was well within the trial court's discretion to deny probation on the grounds that, despite Johnson's apparently successful rehabilitation, granting him probation "would send a message to other children that they can get away with such reprehensible behavior and suffer only minor consequences." *Id.* at 15-16.

Embry attempts to distinguish *Johnson* by pointing out that the language in KRS 533.010 has since been amended from "should grant probation" to "shall grant probation," and contends that the *Johnson* Court relied on the "should" to conclude that courts were encouraged but not required to grant probation. But under the amended statute, courts are not "required" to grant probation if they determine the existence of the disqualifying factors listed in the statute. The decision regarding probation remains within the discretion of the trial court, subject to the statutory factors.

Embry cites numerous other authorities which he contends impose special requirements on the circuit court when it is sentencing a youthful offender. For example, he suggests that a sentencing court is required to consider certain purported characteristics of youthful offenders as outlined in *Roper v. Simmons*,

543 U.S. 551, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005). In *Roper*, the United States Supreme Court held it was unconstitutional, under the Eighth and Fourteenth Amendments, to sentence a defendant to death if he was under eighteen years of age when the crime was committed. It observed that the death penalty is traditionally reserved for the worst offenders and cited research which indicates that juveniles under eighteen cannot be reliably placed in this category because they display a lack of maturity and an underdeveloped sense of responsibility; are more susceptible to negative influences such as peer pressure; and their characters are not as well formed as those of adults. *Id.* at 568, 125 S. Ct. at 1194. But Embry has provided no legal basis for suggesting that these mitigating factors which were used by the Supreme Court to evaluate the constitutionality of imposing the death penalty on juveniles apply to a court making a probation determination.

Embry's reliance on *Commonwealth v. Merriman*, *supra*, and *Thomas v. Commonwealth*, 605 S.W.3d 545 (Ky. 2020), *abrogated on other grounds by Abbott, Inc. v. Guirguis*, 626 S.W.3d 475 (Ky. 2021) is similarly misplaced. KRS 439.3401(4) requires a violent offender to serve eighty-five percent of his sentence before he becomes eligible for probation. KRS 640.030, on the other hand, requires the court to consider probation or conditional discharge when a youthful offender reaches the age of eighteen, regardless of whether he is a violent offender

or how much of his sentence he has served. *Merriman* resolved the conflict between these statutes by holding that the violent offender statute cannot prevent a court from granting probation or conditional discharge to a youthful offender at the eighteen-year-old hearing:

> By the very language in KRS 640.030(2), it is apparent that the Violent Offender Statute cannot act to prevent consideration of probation or conditional discharge on the youthful offender's 18th birthday: The courts are told that they *shall make* one of the three listed determinations. Of course, after due consideration, the trial court may determine that the youthful offender be incarcerated in an adult institution to serve his sentence, as that is one of the three available options.

265 S.W.3d at 200.

*Merriman* does not limit the court's ability to reject probation nor does it impose any new or additional requirement on the court to consider factors specific to youth in deciding whether to grant probation; the statute leaves that determination to the circuit court's discretion within the parameters of KRS 533.010.

In *Thomas*, the circuit court assumed that the violent offender statute did apply to prevent probation because the defendant was over the age of eighteen at the time of sentencing. The Kentucky Supreme Court reversed, extending its holding in *Merriman* to include youthful offenders who were initially sentenced after they reached the age of eighteen. "[T]he violent offender statute is not

-13-

applicable to youthful offenders for purposes of consideration of probation, even if they are sentenced after they reach age eighteen years and five months." *Thomas*, 605 S.W.3d at 566.

The trial court in *Thomas* failed to consider the defendant for probation because it erroneously thought he was ineligible; Embry argues that his case is similar because the trial court failed to consider his youth and related factors. But the cases are clearly distinguishable because there is no statutory authority for Embry's contention. KRS 640.030 on the other hand clearly provides that the court shall consider probation for a youthful offender as one of the three sentencing options. It does not state that the trial court must consider his youth and "related factors." *Merriman* and *Thomas* simply stand for the principle that the violent offender statute does not render a youthful offender ineligible for probation.

Finally, Embry argues that there was simply inadequate evidence to support the circuit court's decision not to grant probation. The record shows that Embry was convicted of wanton endangerment as a youthful offender on a previous occasion. He was thereafter involved in an illegal drug transaction and a robbery and assault involving a firearm. The trial court acted well within its discretion in denying probation.

## CONCLUSION

For the foregoing reasons, the final judgment of the Henderson Circuit Court is affirmed.


ALL CONCUR.


BRIEFS FOR APPELLANT:

Kathleen K. Schmidt
Assistant Public Advocate
Frankfort, Kentucky

BRIEF FOR APPELLEE

Russell Coleman
Attorney General of Kentucky

Ryan D. Mosley
Assistant Solicitor General
Frankfort, Kentucky